**ADAMS STERN GUTIERREZ & LATTIBOUDERE, LLC**
1037 Raymond Boulevard, Suite 710
(973) 735-2742
Attorneys for Defendants Board of Education
for the Clifton School District, and the
Members of the Board of Education for the
Clifton School District

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY – NEWARK VICINAGE

|  |  |
|---|---|
| DAWN COLOMBO,<br><br>          Plaintiff,<br><br>v.<br><br>THE BOARD OF EDUCATION FOR THE CLIFTON SCHOOL DISTRICT, MEMBERS OF THE BOARD OF EDUCATION FOR THE CLIFTON SCHOOL DISTRICT, in their official capacity, CLIFTON HIGH SCHOOL, & JIMMIE WARREN in his official capacity,<br><br>          Defendants. | Civil Action No.<br>2:11:cv-785-SRC-MAS |

BRIEF ON BEHALF OF DEFENDANTS BOARD OF EDUCATION FOR
THE CLIFTON SCHOOL DISTRICT AND THE MEMBERS OF THE BOARD OF
EDUCATION FOR THE CLIFTON SCHOOL DISTRICT IN SUPPORT OF THEIR
MOTION TO DISMISS THE VERIFIED COMPLAINT PURSUANT TO
F.R.C.P. 12(b)(6)

*Of Counsel and On the Brief,*
Sandro Polledri, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................. iv

PRELIMINARY STATEMENT ............................... 1

SUMMARY OF FACTUAL ALLEGATIONS AND
   PROCEDURAL HISTORY................................ 3

STANDARD OF REVIEW .................................. 5

LEGAL ARGUMENT

   POINT I........................................... 7
            THE EQUAL PROTECTION CLAIM SHOULD BE
            DISMISSED BECAUSE THE VERIFIED COMPLAINT
            DOES NOT CHALLENGE LEGISLATION WHICH
            CREATES AN IMPERMISSIBLE CLASSIFICATION
            (Count 1)

            A.   Equal Protection Under Federal and New
                 Jersey Law  ......................... 7

            B.   No Equal Protection Violation
                 Has Been Pled ....................... 10

   POINT II.......................................... 12
            PLAINTIFF'S FIRST AMENDMENT SHOULD
            BE DISMISSED BECAUSE SHE HAS NOT
            PLED THE NECESSARY ELEMENTS (Count 2)

            A.   Freedom of Intimate and Expressive
                 Association ......................... 12

            B.   Right to Petition and Freedom from
                 Retaliation ......................... 13

   POINT III......................................... 16
            THE SUBSTANTIVE DUE PROCESS CLAIM SHOULD BE
            DISMISSED BECAUSE PLAINTIFF HAS
            NOT PLED THE ELEMENTS OF A "SPECIAL
            RELATIONSHIP" OR A "STATE-CREATED DANGER"
            THE DISTRICT COURT PROPERLY DETERMINED
            (Count 4)

**A.** There Is No "Special Relationship" Between Plaintiff and the Defendants .. 17

**B.** Plaintiff Has Not Pled the Elements of a "State-Created Danger" Claim .... 17

    **1.** The Harm Was Not Forseeable and Direct ....................... 18

    **2.** There Was No "Conscience-Shocking" Conduct ................ 19

    **3.** Plaintiff Was Not a Member of a Discrete Class Who Was a Forseeable Victim .............. 20

    **4.** There Was No Affirmative Use of Authority ................. 21

**POINT IV** ........................................ 22
PLAINTIFF'S CONSTITUTIONAL CLAIMS SHOULD BE DISMISSED BECAUSE WARREN WAS A PRIVATE ACTOR WHO WAS NOT ACTING UNDER COLOR OF STATE LAW (Counts 1, 2 and 4)

**POINT V** ......................................... 24
PLAINTIFF'S CONSTITUTIONAL CLAIMS SHOULD BE DISMISSED BECAUSE DEFENDANTS HAD NO DUTY TO TRAIN UNDER THESE CIRCUMSTANCES AND DEFENDANTS' ACTIONS DO NOT CONSTITUTE DELIBERATE INDIFFERENCE (Counts 1, 2 and 4)

**A.** Defendants Are Not Liable on a Failure to Train Claim ................ 24

**B.** Defendants' Actions Did Not Amount to Deliberate Indifference .............. 27

**POINT VI** ......................................... 28

      PLAINTIFF'S "THOROUGH AND EFFICIENT"
EDUCATION CLAIM SHOULD BE DISMISSED
BECAUSE THE COMMISSIONER OF EDUCATION
HAS JURISDICTION OVER THAT CLAIM
(Count 3)

**POINT VII** ........................................ 31

      PLAINTIFF CANNOT BRING A PERSONAL
TITLE IX CLAIM ON HER OWN BEHALF
(Count 5)

**POINT VIII** ....................................... 32

      PLAINTIFF'S LAW AGAINST DISCRIMINATION
CLAIM SHOULD BE DISMISSED BECAUSE THE
LAW ONLY RECOGNIZES A CLAIM FOR STUDENT-
ON-STUDENT HARASSMENT AND PLAINTIFF IS
NOT AN "AGGRIEVED PERSON" UNDER THE
STATUTE (Count 6)

      **A.**   Plaintiff Is Not Asserting a
Student-on-Student Harassment
Claim ................................. 33

      **B.**   Plaintiff Is Not an "Aggrieved
Person" Under the LAD ................ 35

**CONCLUSION** .......................................... 38

## TABLE OF AUTHORITIES

### CASES

*Ambrose v. Twp. of Robinson,*
   303 F.3d 488 (3d Cir. 2002) ...................... 14,15

*Ashcroft v. Iqbal,*
   129 S.Ct. 1937 (2009) ............................ 6

*Barna v. City of Perth Amboy,*
   42 F.3d 809 (3d Cir. 1994) ....................... 22

*Beers-Capitol v. Whetzel,*
   *256 F.3d 120 (3d Cir. 2001)* ..................... 27

*Bell Atlantic Corporation v. Twombly,*
   550 U.S. 544 (2007) .............................. 6,19

*Bradshaw v. Township of Middletown,*
   296 F.Supp.2d 526 (D.N.J. 2003), affirmed,
   145 Fed. Appx. 763 (3d Cir. 2005) ................ 13,14

*Bright v. Westmoreland Cnty.,*
   443 F.3d 276 (3d Cir. 2006) ...................... 18,21

*Catalane v. Gillian Instrument Corp.,*
   271 N.J. Super. 476 (App. Div. 1994),
   certif. den. 136 N.J. 298 (1994) ................. 37

*City of Canton, Ohio v. Harris,*
   489 U.S. 378 (1989) .............................. 25,26

*Cleburne v. Cleburne Living Center,*
   473 U.S. 432 (1985) .............................. 10,11

*Collins v. City of Harker Heights,*
   503 U.S. 115 (1992) .............................. 8

*Cunningham v. Lenape Regional High District*
   *Board of Education,*
   492 F.Supp.2d 439 (D.N.J. 2007) .................. 9

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,*
   489 U.S. 189 (1989) .............................. 16,17

*D.R. v. Middle Bucks Area Vocational Technical School,* 972 F.2d 1364 (3d Cir. 1992) .............. 17,21

*Felicioni v. Administrative Offices of the Courts,* 404 N.J. Super. 382 (App. Div. 2008), certif. den. 203 N.J. 440 (2010).................. 11

*Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir. 2009)....................... 6,7

*Gillespie v. Dep't of Educ.,* 397 N.J. Super. 545, 938 A.2d 184 (App. Div. 2008).................................. 6

*Graham v. Richardson,* 403 U.S. 365 (1971) ........... 11

*Graham v. Vanden Huevel,* 2011 WL 1256607, (D.N.J. 2011).................... *passim*

*Gremo v. Karlin,* 363 F.Supp.2d 771 (E.D. Pa. 2005).................. 18,28

*Haines v. Metropolitan Government of Davidson County, Tennessee,* 32 F.Supp.2d 991 (M.D. Tenn. 1998)................................ 32

*Hinfey v. Matawan Regional Board of Education,* 77 N.J. 514 (1978)................................ 29,30

*Kentucky v. Graham,* 473 U.S. 159 (1985)................................ 5

*Kline v. Mansfield,* 255 Fed. Appx. 624 (3d Cir. 2007)................. 26

*L.W. v. Toms River,* 189 N.J. 381 (2007)............................... *passim*

*Lehmann v. Toys 'R' Us,* 132 N.J. 587 (1993)................................ 34

*Mark v. Borough of Hatboro,* 51 F.3d 1137 (3d Cir. 1995), cert. denied, 516 U.S. 858 (1995)................................ 9,15,23

*McLaughlin v. Florida,* 379 U.S. 184(1964)................................ 11

*Monell v. Dept. of Social Services,*
     436 U.S. 658 (1978) ................................   25

*Morse v. Lower Merion School Dist.,*
     132 F.3d 902 (3d Cir. 1997) .......................   18

*Nicini v. Morra,*
     212 F.2d 798 (3d Cir. 2000) .......................   16

*Owens v. Feigin,*
     194 N.J. 607 (2008) ...............................   9

*PC Air Rights, LLC v. Mayor and Council of the City of
     Hackensack,*
     2006 WL 2035669, *9 (Law Div. 2006), aff'd,
     2010 WL 2557288 (App. Div. 2010) ..................   10

*Pennsylvania ex rel. Zimmerman v. PepsiCo.,*
     836 F.3d 173 (3d Cir. 1988) .......................   19

*Phillips v. County of Allegheny,*
     515 F.3d 224 (3d Cir. 2008) .......................   6,19

*Pi Lambda Phi Fraternity, Inc. v. University
     of Pittsburgh,* 229 F.3d 435 (3d Cir. 2000) ........   12

*R.K. v. Y.A.L.E. Schools, Inc.,*
     621 F.Supp.2d 188 (D.N.J. 2008),
     decision on motion for reconsideration,
     2009 WL 1066125 (D.N.J. 2009) .....................   14

*Roberts v. United States Jaycees,*
     468 U.S. 609 (1984) ...............................   12,13

*Roman Check Cashing, Inc. v. New Jersey Dep't.
     of Banking & Ins., 169 N.J. 105 (2001)* ...........   10

*Rowinsky v. Bryan Independent School District,*
     80 F.3d 1006 (5th Cir. 1996), certif. den.
     519 U.S. 861 (1996) ...............................   32

*San Filippo v. Bongiovanni,*
     30 F.3d 424, (3d Cir. 1994), certif. den.
     513 U.S. 1082 (1995) ..............................   14

*Sojourner v. New Jersey Department of Human Services,*
   177 N.J. 318 (2003) ............................... 8

*State Farm Mut. Auto Ins. Co. v. State,*
   124 N.J. 32 (1991) ................................ 10

*Theodore v. Dover Board of Education,*
   183 N.J. Super. 407 (App. Div. 1982) .............. 29,30

*United States v. Classic,*
   313 U.S. 299 (1941) ............................... 22

*Young v. Pleasant Valley School District,*
   2008 WL 417739, *5 (M.D.Pa. 2008) ................. 31,32

*Young v. Pleasant Valley School Dist.,*
   2010 WL 55711, *10 (M.D. Pa. 2010) ................ 26

*Ward v. Barnes,*
   545 F.Supp.2d 400 (D.N.J. 2008) ................... 17

**RULES**

F.R.C.P. 12(b)(6) ................................. *passim*

R. 1:13-4 ........................................ 30

**CODES & STATUTES**

N.J.A.C. 6A:3-1.1 et seq. ......................... 29

N.J.A.C. 6A:4-1.3 ................................. 29

N.J.S.A. 10:5-1 et seq. ........................... *passim*

N.J.S.A. 10:5-5(1) ................................ 33,35,36

N.J.S.A. 10:5-12(f)(1) ............................ 36

N.J.S.A. 10:5-13 .................................. 37

N.J.S.A. 10:6-1 et seq. ........................... 9

N.J.S.A. 10:6-2(c) ................................ 9,10

N.J.S.A. 10:6-2(f) .................................... 9,10

N.J.S.A. 18A:1-1 et seq. ............................. 28,29

N.J.S.A. 18A:6-9 ..................................... 29

N.J.S.A. 18A:6-9.1(a) ................................ 29

N.J.S.A. 18A:30-2.1 .................................. 30

20 U.S.C. §1681 ...................................... 2,4,31

42 U.S.C. §1983 ...................................... 8,9

## **PRELIMINARY STATEMENT**

Plaintiff Dawn Colombo ("Plaintiff") is the mother of two Clifton High School students. Plaintiff alleges that defendant Jimmie Warren ("Warren"), who was the Clifton High School principal until he retired in April 2011, sexually harassed and propositioned her on a number of occasions in 2010. According to Plaintiff, Warren said that he would ensure that Plaintiff's son was promoted to the next grade, and offered to rescind his suspension, in order to encourage Plaintiff to have sex with him.

Plaintiff refused Warren's sexual advances and initiated this lawsuit which asserts a variety of Constitutional and statutory claims. All claims should be dismissed against the Clifton Board of Education and the members of the Board of Education (collectively, "Defendants") pursuant to F.R.C.P. 12(b)(6). The equal protection claim is untenable because the alleged facts do not establish an impermissible classification. Plaintiff has not pled the elements of a First Amendment or a substantive due process claim. Further, Warren, who is represented by separate counsel, was a private actor and was not acting under color of state law when he committed the alleged sexual misconduct. Plaintiff's claim that the Defendants violated their obligation to provide a "thorough and efficient" education should be dismissed because she has not pursued her

administrative remedies.  Plaintiff's cause of action under Title IX, 20 U.S.C. §1681 et seq., should likewise be dismissed at the outset because that statute cannot be used to support a personal sex discrimination claim on behalf of a parent. Finally, the claim arising under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., should not be allowed to proceed because that law only protects student-on-student harassment, and Plaintiff does not satisfy the definition of an "aggrieved person" under the statute.  For these reasons, the Verified Complaint should be dismissed with prejudice pursuant to F.R.C.P. 12(b)(6).

## SUMMARY OF FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Plaintiff is the mother of two children who were students at Clifton High School. Plaintiff's minor daughter is identified as N.C. and her son, who was a minor when these events were taking place, is identified as B.C. (Polledri Cert., Ex. A, Verified Complaint, ¶4). Until he retired on April 1, 2011, Warren was the principal of Clifton High School.[1] (Polledri Cert., Ex. A, Verified Complaint, ¶9; Ex. B, Resignation Letter).

According to Plaintiff, Warren engaged in a "continuing pattern of extremely inappropriate, unwelcome, harassing, and sexually suggestive communications with Plaintiff" on a number of occasions in or around 2010. (Polledri Cert., Ex. A, Verified Complaint, ¶17). Plaintiff has alleged that Warren touched her breasts, encouraged her to perform various sex acts and arranged a meeting with her in a hotel room. (Polledri Cert., Ex. A, Verified Complaint, ¶¶24-40).

Plaintiff contends that Warren refused to lift a suspension imposed on her son because she rejected his sexual advances. (Polledri Cert., Ex. A, Verified Complaint, ¶42). As a result of Warren's actions against Plaintiff, N.C. her daughter has "endured significant harassment and ridicule" and has been

---

[1] Plaintiff also named Clifton High School as a party-defendant. An appearance was not entered on behalf of the high school because it is not a separate legal entity.

subjected to "name-calling and threats of physical harm from other students." (Polledri Cert., Ex. A, Verified Complaint, ¶44).

According to the pleading, Warren has been charged with several criminal offenses and the matter is under investigation by the Passaic County Prosecutor's Office and the Clifton Police Department. (Polledri Cert., Ex. A, Verified Complaint, ¶45). On March 16, 2011, Warren resigned from his position as principal and retired effective April 1, 2011. (Polledri Cert., Ex. B, J. Warren Letter dated March 16, 2011).

On or about February 10, 2011, Plaintiff filed a Verified Complaint and application for an Order to Show Cause and brought the following claims: (1) equal protection; (2) freedom of association; (3) right to petition and retaliation; (4) "thorough and efficient" system of free public education pursuant to the New Jersey Constitution; (5) substantive due process; (6) Title IX of the Education Amendments of 1972, 20 U.S.C. §1681; and (7) the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.[2] (Polledri Cert., Ex. A, Verified Complaint).

_____

[2] The Verified Complaint makes clear that the "individual members of the Board of Education are being sued only in their _official capacity[.]_" (See Verified Complaint, ¶7)(emphasis added). Actions brought against government officials in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent. ... It

Plaintiff is seeking economic damages, non-economic damages and compensation for her emotional distress. (Polledri Cert., Ex. A, Verified Complaint, p. 29, ¶b). Plaintiff also requested that her daughter be transferred to "another high school within a reasonable proximity to the City of Clifton." (Polledri Cert., Ex. A, Verified Complaint, p. 29, ¶a).

On March 17, 2011, the Hon. Stanley R. Chesler, U.S.D.J. denied Plaintiff's request for a transfer to another school and found that the circumstances did not warrant emergent relief or a preliminary injunction. (Polledri Cert., Ex. C, Opinion and Order dated March 17, 2011).

For the reasons explained herein, Plaintiff's Verified Complaint should be dismissed at this juncture pursuant to F.R.C.P. 12(b)(6).

## STANDARD OF REVIEW

A court may grant a motion to dismiss when the complaint does not state a claim upon which relief may be granted. F.R.C.P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading

---

is _not_ a suit against the official personally, for the real party in interest is the entity." (emphasis in original). An official capacity suit is "to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)(internal citations omitted).

of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal citations and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the Rule 12(b)(6) standard to now require that the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

The Third Circuit has stated that "[t]he Supreme Court's Twombly formulation ... requires 'a complaint with enough factual matter to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element.'" Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In affirming that the Twombly standards apply to all motions to dismiss, the Supreme Court recently explained "that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.   Therefore, "a court considering a

motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." <u>Fowler</u>, 578 F.3d at 211.  As set forth herein, the Verified Complaint does not satisfy this standard and it should be dismissed pursuant to <u>F.R.C.P.</u> 12(b)(6).

<u>**LEGAL ARGUMENT**</u>

**POINT I**

**THE EQUAL PROTECTION CLAIM SHOULD BE
DISMISSED BECAUSE THE VERIFIED COMPLAINT
DOES NOT CHALLENGE LEGISLATION WHICH
<u>CREATES AN IMPERMISSIBLE CLASSIFICATION</u>**

<u>**(Count 1)**</u>

The equal protection clause normally arises when a statute impermissibly makes a classification based upon membership in a suspect class.  Classifications based upon criteria such as race or national origin are strictly scrutinized to ensure that personal rights and liberties are not being compromised.  The facts alleged in the Verified Complaint do not present an equal protection claim and this cause of action should be dismissed.

A. <u>**Equal Protection Under Federal and New Jersey Law**</u>

The Fourteenth Amendment of the U.S. Constitution provides that the government shall "not deny to any person within [their]

jurisdiction the equal protection of the law." U.S. Constitution, Amendment XIV, ¶1. In the New Jersey Constitution, the right to equal protection is contained in the following clause:

> All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property, and of pursuing and obtaining safety and happiness.

N.J. Constitution, Art. I, ¶1. "[I]t is well settled law that the [foregoing] expansive language ... is the source" for equal protection under the N.J. Constitution. Sojourner v. New Jersey Department of Human Services, 177 N.J. 318, 332 (2003).

42 U.S.C. §1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. §1983. The statute "provides a civil remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992).

Significantly, §1983 merely serves as a vehicle to enforce rights expressed in the federal Constitution or federal law, but does not confer any substantive rights. Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995), cert. denied, 516 U.S. 858 (1995); Cunningham v. Lenape Regional High District Board of Education, 492 F.Supp.2d 439, 445 (D.N.J. 2007) (citing Baker v. McCollan, 443 U.S. 137, 144 (1979)). To prove a claim under this section, a plaintiff must establish that: (1) the government defendant was acting under color of state law; and (2) the plaintiff was deprived her of rights secured by the United States Constitution or federal law. Id. at 446.

The New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq., makes it unlawful for any person "acting under color of law" to "deprive[ ]" any person of "substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State[.]" N.J.S.A. 10:6-2(c).

The New Jersey Civil Rights Act is essentially a "State analog to the federal civil rights act codified at 42 U.S.C.A. 1983" that is "enforceable in New Jersey state courts." (Polledri Cert., Ex. D, Gov. James McGreevey Statement); Owens v. Feigin, 194 N.J. 607, 611-612 (2008). It authorizes the award of damages or injunctive relief as well as the prevailing

9

party's reasonable attorneys' fees and costs. <u>N.J.S.A.</u> 10:6-2(c), (f). Like §1983, the Act "does not create any new substantive rights, override existing statutes of limitations, waive immunities or alter jurisdictional or procedural requirements . . . that are otherwise applicable to the assertion of constitutional and statutory rights." (Polledri Cert., Ex. D, Gov. James McGreevey Statement). Instead of creating new legal rights and remedies, the Act simply provides plaintiffs with a "procedural mechanism" to pursue existing state and federal Constitutional rights in New Jersey state courts. <u>Id.</u>

When evaluating claims arising under the New Jersey Civil Rights Act and the New Jersey Constitution, courts generally apply the "standards developed by the United States Supreme Court under the federal Constitution." <u>PC Air Rights, LLC v.</u> <u>Mayor and Council of the City of Hackensack</u>, 2006 WL 2035669, *9 (Law Div. 2006), <u>aff'd</u>, 2010 WL 2557288 (App. Div. 2010) (<u>quoting</u> <u>Roman Check Cashing, Inc. v. New Jersey Dep't. of Banking &</u> <u>Ins.</u>, 169 N.J. 105, 110 (2001)); <u>State Farm Mut. Auto Ins. Co.</u> <u>v. State</u>, 124 N.J. 32, 46-47 (1991).

**B.  <u>No Equal Protection Violation Has Been Pled</u>**

The equal protection clause is "essentially a direction that all persons similarly situated should be treated alike." <u>Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 439-40 (1985).

An equal protection violation normally arises when there is disparate treatment of persons "who are or ought to be considered to be members of the same class." Felicioni v. Administrative Offices of the Courts, 404 N.J. Super. 382, 397 (App. Div. 2008), certif. den. 203 N.J. 440 (2010).

The equal protection clause is typically used to determine the validity of legislation, which "is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." Cleburne, 473 U.S. at 440 (internal citations omitted). The equal protection clause gives wide latitude to states when social or economic legislation is being evaluated. Id. at 440. However, when statutes make classifications based upon race, alienage or national origin, or "impinge on personal rights protected by the Constitution," they will be "subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest." Id.; McLaughlin v. Florida, 379 U.S. 184, 192 (1964); Graham v. Richardson, 403 U.S. 365 (1971).

Count One of the Verified Complaint alleges that Plaintiff's equal protection rights have been violated. However, Plaintiff is not challenging the validity of any statute, nor is she alleging that she has been improperly classified based upon her membership in a suspect class.

Plaintiff has not alleged the facts needed to present an equal protection claim and this cause of action should be dismissed.

**POINT II**

**PLAINTIFF'S FIRST AMENDMENT SHOULD
BE DISMISSED BECAUSE SHE HAS NOT
PLED THE NECESSARY ELEMENTS**

**(Count 2)**

**A.   Freedom of Intimate and Expressive Association**

"The Supreme Court has held that there are two kinds of freedom of association that are constitutionally protected: intimate association and expressive association." Pi Lambda Phi Fraternity, Inc. v. University of Pittsburgh, 229 F.3d 435, 441 (3d Cir. 2000).

"The right of intimate association involves an individual's right to enter into and maintain intimate or private relationships free of state intrusion." Id.   "Family relationships are the paradigmatic form of protected intimate associations[.]"   Id.   Personal affiliations and intimate human activities such as childbirth, raising and educating children, and cohabitation with relatives may also warrant this type of constitutional protection.   Roberts v. United States Jaycees, 468 U.S. 609, 619-20 (1984).

The right of expressive association embodies the right to associate with others "for the purpose of engaging in those activities protected by the First Amendment – speech, assembly,

petition for the redress of grievances, and the exercise of religion." Roberts, 468 U.S. at 618. This embodies the "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." Id. at 622.

In her Verified Complaint, Plaintiff alleges that Warren created a hostile environment and made unwanted sexual advances. In Count Two of her pleading (Ex. A, Verified Complaint, ¶58), Plaintiff mentions in passing that her freedom of association was violated. However, Plaintiff does not make any factual assertions describing *how* the Defendants interfered with her intimate or private relationships as defined by the freedom of association. Nor does Plaintiff allege that her right to expressive association, such as her right to associate with others for protected purposes, was affected. Plaintiff has not pled the elements of an intimate association or expressive association claim, and these causes of action should be dismissed pursuant to F.R.C.P. 12(b)(6).

**B.   Right to Petition and Freedom from Retaliation**

The First Amendment of the U.S. Constitution guarantees "the right of the people ... to petition the Government for a redress of grievances." U.S. Const. Amend. I. Citizens also have the right to be "free from government retaliation for exercising this right." Bradshaw v. Township of Middletown,

296 F.Supp.2d 526, 545 (D.N.J. 2003), affirmed, 145 Fed. Appx. 763 (3d Cir. 2005).

A plaintiff who asserts a First Amendment retaliation claim based upon the right to petition must demonstrate the following elements: (1) she engaged in a protected activity, which in this context means the filing of a lawsuit or the pursuit of a formal grievance mechanism; (2) the defendant knew that the plaintiff engaged in the protected activity; (3) the government retaliated against the plaintiff in a manner that was "sufficient to deter a person of ordinary firmness from exercising his or her rights"; and (4) there was a causal connection between the protected activity and the retaliation.  R.K. v. Y.A.L.E. Schools, Inc., 621 F.Supp.2d 188, 196-97 (D.N.J. 2008), decision on motion for reconsideration, 2009 WL 1066125 (D.N.J. 2009); San Filippo v. Bongiovanni, 30 F.3d 424, 440, n. 18, 442-43 (3d Cir. 1994), certif. den. 513 U.S. 1082 (1995); Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002).

The right to petition claim should be dismissed at this juncture because the pleading does not describe the second prong of a First Amendment retaliation claim, namely, that the Defendants allegedly *knew* that Plaintiff engaged in protected activity.  "It is only intuitive that for protected conduct to be a substantial or motivating factor in a decision, the

decisionmakers must be aware of the protected conduct." Ambrose, 303 F.3d at 493.

As described more fully infra, the Verified Complaint only makes a sweeping, conclusory allegation that the members of the Board of Education knew about Plaintiff's protected activities and Warren's sexual misconduct. (Polledri Cert., Ex. A, ¶¶25, 89). Since the pleading does not contain any factual contentions which specifically allege how the Board members or high-level administrators knew about these underlying events, they could not have retaliated against her on that basis as a matter of law.

Further, as set forth more fully in Point IV, even if Warren in fact retaliated against Plaintiff as she believes, Defendants cannot be responsible for his actions because he was a private actor who was not acting under color of law, and his sexual misconduct was not related to his job duties. See e.g. Mark v. Hatboro, 51 F.3d 1137, 1150-51 (3d Cir. 1995), cert. den. 516 U.S. 858 (1995). For these reasons, the right to petition and retaliation claim should be dismissed.

## POINT III

**THE SUBSTANTIVE DUE PROCESS CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS NOT PLED THE ELEMENTS OF A "SPECIAL RELATIONSHIP" OR A "STATE-CREATED DANGER"**

### (Count 4)

Although it is not expressly pled as such, Count Four appears to assert a claim pursuant to the case law recognizing a "right to bodily integrity" and a right to be protected against "private violence" under the substantive due process clause. "As a general proposition, a state's failure to protect an individual against private violence does not constitute a violation of due process." Graham v. Vanden Huevel, 2011 WL 1256607, *5 (D.N.J. 2011)(quoting Nicini v. Morra, 212 F.2d 798, 806 (3d Cir. 2000); DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 202 (1989).

However, government actors have a duty to protect against violence committed by a third party if: (1) a "special relationship" exists between the plaintiff and the state; or (2) a "state-created danger" exists. Graham, supra, at *5 (quoting Ward v. Barnes, 545 F.Supp.2d 400, 423 (D.N.J. 2008) and Nicini, supra. This claim should be dismissed on the pleadings because they do not suggest the presence of a special relationship or a state-created danger.

A.   **There Is No "Special Relationship"**
     **Between Plaintiff and the Defendants**

A special relationship exists when the state places an affirmative restraint upon the plaintiff's freedom to act, such as through incarceration, institutionalization or involuntary commitment.   The special relationship clearly contemplates a custodial element, such as that which exists with a prisoner or an involuntarily-committed psychiatric patient.   DeShaney, supra, 489 U.S. at 200; D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364, 1369-70 (3d Cir. 1992).

The Third Circuit has held that a special relationship does not exist between students and public schools because there is no restraint of their liberty or freedom.   D.R., supra, at 1372-73; Graham, supra, at *5.   It necessarily follows that a special relationship does not exist between Plaintiff, who is an adult parent, and the Defendants, because she was never in custody and there was no restriction upon her liberty or freedom of movement.   The substantive due process claim based upon a special relationship theory should be dismissed because these facts have not been pled.

B.   **Plaintiff Has Not Pled the Elements**
     **of a "State-Created Danger" Claim**

The substantive due process cause of action is also materially deficient when analyzed as a state-created danger claim, which is the alternate theory of recovery under this

analysis.   A state-created danger claim has the following elements:

> (1) the harm ultimately caused was forseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a forseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Graham, supra, at *5; Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006).  A "deliberate indifference" standard applies when determining liability under the state-created danger theory.  Graham, supra, at *5; Morse v. Lower Merion School Dist., 132 F.3d 902, 908 (3d Cir. 1997).

### 1.   The Harm Was Not Forseeable and Direct

A harm is "forseeable when a state actor has actual awareness, based on concrete information, of a risk of harm ..." Graham, supra, at *5; Gremo v. Karlin, 363 F.Supp.2d 771, 784-85 (E.D. Pa. 2005).  In the pending case, the Verified Complaint makes only a broad, conclusory allegation that the members of the Board of Education and other school officials "were aware of Warren's activities and took no action in response thereto

despite their legal duty to do so." (Polledri Cert., Ex. A, Verified Complaint, ¶25). Since the Verified Complaint does not allege with any specificity that the Defendants or high-level school officials knew about the alleged sexual misconduct of Warren, they could not have been on notice that their actions enhanced any risk to Plaintiff. Graham, supra, at *5.

At a minimum, the pleading should describe the nature and quality of the information that was supposedly reported to the Board members. The Twombly standard requires a plaintiff to prepare "a complaint with enough factual matter to suggest" the required element. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The factual allegations contained in a complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007).

Importantly, the Third Circuit has held that "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Graham, supra, at *3-4, n. 2 (quoting Pennsylvania ex rel. Zimmerman v. PepsiCo., 836 F.3d 173, 181 (3d Cir. 1988). Plaintiff has not pled the first element of this claim and it should not be allowed to proceed.

## 2.   There Was No "Conscience-Shocking" Conduct

The second prong of the state-created danger test requires the defendant to have acted "with a degree of culpability that

shocks the conscience." Graham, supra, at *6.  As stated above, Plaintiff has not alleged any specific facts or events showing that Defendants or high-ranking administrators knew about Warren's alleged misconduct.  Without such knowledge about Warren's actions, Defendants had no reason to take any steps to investigate or curtail his activities.  Id.

On March 16, 2011, about a month after the Verified Complaint was filed, Warren resigned and retired from the District.  (Polledri Cert., Ex. B, Resignation Letter). Warren's retirement ensured that he would not come into contact with Plaintiff on school property and would no longer have any influence over the educational services provided to Plaintiff's children.  On March 17, 2011, the court denied Plaintiff's application for an order to show cause and found that there was no basis for emergent relief.  (Polledri Cert., Ex. C, Decision of Hon. Stanley R. Chesler, U.S.D.J.).  Under the circumstances, Defendants' actions were not "conscience-shocking" and the state-created danger claim should be dismissed.

### 3.   Plaintiff Was Not a Member of a Discrete Class Who Was a Forseeable Victim

The third prong is a tort-like element which requires a showing that the plaintiff was a member of a "discrete class of persons, as opposed to the public in general, who were forseeable victims of the resulting harm."  Graham, supra, at

*6.   While  the  Verified  Complaint  contains  a  broadly-worded substantive due process claim at ¶¶77-86, Plaintiff has not pled this  element  and  the  state-created  danger  claim  should  be dismissed on that basis alone.

Putting  the  pleading  deficiency  aside,  this  claim  should  be dismissed  for  a  more  fundamental  reason.   Since  the  Defendants' actions  did  not  cause  Warren  to  inflict  any  harm  upon  Plaintiff, she  did  not  belong  to  a  discrete  class  of  forseeable  victims  and this element is not present.  <u>Graham</u>, <u>supra</u>, at *6.

### 4.   <u>There Was No Affirmative Use of Authority</u>

The  final  element  of  a  state-created  danger  claim  requires that  the  defendants  took  "affirmative  acts  which  work  to  the plaintiffs'  detriments  in  terms  of  exposure  to  danger."   <u>Graham</u> at  *6  (internal  citations  omitted).   "The  test  also  requires  a direct  causal  relationship  between  the  affirmative  act  and forseeable  harm  to  the  plaintiff."   <u>Graham</u>  at  *6,  <u>quoting</u> <u>Bright</u>, 443 F.3d at 283 and <u>D.R.</u>, 972 F.2d at 1374.

The  facts  of  the  Verified  Complaint  are  cast  as  a  failure to  act  in  that  the  Defendants  allegedly  neglected  to  investigate or  monitor  Warren's  actions,  as  opposed  to  a  scenario  whereby the  Defendants  took  affirmative  steps  to  "misuse"  their authority.   <u>Graham</u>  at  *6  (<u>quoting</u>  <u>Bright</u>,  443  F.3d  at  282). Since  Plaintiff  has  not  pled  this  element  in  her  pleading,  this claim  should  be  dismissed  pursuant  to  <u>F.R.C.P.</u>  12(b)(6).

Whether it is viewed under the "special relationship" or the "state-created danger" framework, it is apparent that Plaintiff has not pled the elements needed to assert a substantive due process claim and Count Four of the Verified Complaint should be dismissed.

POINT IV

**PLAINTIFF'S CONSTITUTIONAL CLAIMS SHOULD BE DISMISSED BECAUSE WARREN WAS A PRIVATE ACTOR WHO WAS NOT ACTING UNDER COLOR OF STATE LAW**

**(Counts 1, 2 and 4)**

As a threshold matter, §1983 requires Plaintiff to show that she suffered a violation of her Constitutional rights committed by Defendants who were acting under color of state law. The Third Circuit has held that an otherwise private tort is not committed under color of state law simply because the tortfeasor is an employee of the state. Rather, in order for the tortfeasor to be acting under color of state law, his act must entail "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." United States v. Classic, 313 U.S. 299, 326 (1941); Barna v. City of Perth Amboy, 42 F.3d 809, 815-16 (3d Cir. 1994).

"[U]nder color of state law means under 'pretense' of law. Thus, acts of officers in the ambit of their personal pursuits are plainly excluded ... [E]ven 'acts committed by a police

officer ... while on duty and in uniform are not under color of state law unless they are in some way related to the performance of police duties.'"   If a person's actions "were not "committed in the performance of any actual or pretended duty,' the actions were not committed under color of law."   Mark v. Hatboro, 51 F.3d 1137, 1150-51 (3d Cir. 1995), cert. den., 516 U.S. 858 (1995)(internal citations omitted).

In Hatboro, the court found that there was no viable §1983 claim against a volunteer fire company and the borough when a volunteer firefighter, who had been trained to extinguish fires, instead deliberately burned down the plaintiff's place of business.   Hatboro, 51 F.3d at 1138.   The court found that the firefighter, in setting a fire that was directly contrary to his public duty, was a private actor who was pursuing his own goals and was not subject to control by his employer.   Id. at 1151.

Similarly, accepting the pleaded facts as true for purposes of the pending motion, Warren could only have been acting in a private capacity when he pursued an inappropriate sexual relationship with Plaintiff and engaged in sexual misconduct. Warren was not in any way advancing the goals of the Defendants and acted contrary to any acceptable professional or ethical standards.   Warren, like the firefighter in Hatboro, cannot cloak his actions under pretense of his authority as a school administrator.   Consequently, Warren did not act under color of

state law and all his §1983 and parallel claims under the N.J. Constitution should be dismissed on this basis.

### POINT V

**PLAINTIFF'S CONSTITUTIONAL CLAIMS SHOULD BE DISMISSED BECAUSE DEFENDANTS HAD NO DUTY TO TRAIN UNDER THESE CIRCUMSTANCES AND DEFENDANTS' ACTIONS DO NOT CONSTITUTE DELIBERATE INDIFFERENCE**

### (Counts 1, 2 and 4)

Plaintiff's Constitutional claims fail because she has not pled facts to support a failure to train claim, nor has she asserted specific facts showing that Defendants _knew_ about Warren's conduct, which is necessary to prevail under the deliberate indifference standard.  Aside from the reasons set forth above, these deficiencies warrant dismissal of Plaintiff's equal protection, freedom of association, right to petition, retaliation and substantive due process claims.

**A.   Defendants Are Not Liable on a Failure to Train Claim**

Plaintiff has alleged that Defendants are liable for a failure to train claim under §1983 because they failed to "implement practices, procedures and policies that would deter [their] employees from discriminating based upon sex and engaging in sexual misconduct."  (Polledri Cert., Ex. A, Verified Complaint, ¶¶52, 62, 73, 83).

Public entities are only liable under §1983 when the actions of their employees or agents are implemented pursuant to

a policy, practice or custom of the government agency.  Monell v. Dept. of Social Services, 436 U.S. 658, 691 (1978).  However, this is not "satisfied by merely alleging that the existing training program ... represents a policy for which the [governmental entity] is responsible."  Instead, the entity is responsible "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact."  Deliberate indifference is a "deliberate" or "conscious" choice by the entity.  City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89 (1989).

In Graham v. Vanden Huevel, 2011 WL 1256607 (D.N.J. 2011), the plaintiff was a high school girl who alleged that a 45-year old art teacher inappropriately touched her and made sexual advances on school property and during school hours.  The County Prosecutor's Office investigated and found that the teacher's actions "exceeded an acceptable student-teacher relationship," but did not constitute statutory sexual abuse.  Id. at *1.

The plaintiff in Graham brought §1983, Title IX and tort claims.  The school district and administrators responded with a motion to dismiss, and contended they were not responsible for the teacher's actions because he was a "private actor" and they had no knowledge of his actions.  Id. at *1-2.

The court dismissed all claims against the district and administrators.  In addressing the failure to train claim,

25

Graham relied upon City of Canton and held that it could only be maintained when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [entity] can reasonably be said to have been deliberately indifferent to the need." Graham at *3 (quoting Canton, 489 U.S. at 390).

The court specifically held that there was no duty to train a school employee to refrain from committing sexual abuse. Engaging in sexual abuse is "so obviously wrong and contrary to right than an ordinary person could recognize it as inappropriate even without any additional training." Graham at *3 (quoting Young v. Pleasant Valley School Dist., 2010 WL 55711, *10 (M.D. Pa. 2010)). Similarly, in Kline v. Mansfield, 255 Fed. Appx. 624, 639 (3d Cir. 2007), the Third Circuit held that since "not committing the crime of sexually abusing a child is so obvious and self-evident, the failure of [the school] to train its employees to spot signs of sexual abuse ... was not deliberately indifferent."

It cannot be disputed that the Defendants in the pending case had no duty to train or instruct Warren to avoid engaging in sexual misconduct against Plaintiff because such actions are so obviously wrong and inappropriate. Based upon Graham, Young and Kline, Plaintiff's Constitutional claims which are grounded in a failure to train theory should be dismissed.

**B.**   **Defendants' Actions Did Not Amount**
         **to Deliberate Indifference**

Plaintiff also contends that Defendants allowed Warren to sexually abuse her pursuant to an "extant policy" that was "ratified" by the Defendants.  (Polledri Cert., Ex. A, Verified Complaint, ¶¶50, 51, 60, 61, 71, 72, 81, 82).  A prerequisite for asserting a cause of action for a custom, policy or practice, a plaintiff must show that the actions of the defendants constituted deliberate indifference.  "[A] successful deliberate indifference claim requires showing that the defendant knew of the risk to the plaintiff before the plaintiff's injury occurred."  Graham at *4 (quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 137 (3d Cir. 2001).

In the pending case, Plaintiff has only made a broad, conclusory allegation that the members of the Board of Education and school officials "were aware of Warren's activities and took no action in response[.]"  (Polledri Cert., Ex. A, Verified Complaint, ¶¶25, 89).  However, as discussed above, Plaintiff has not provided any details or described any specific facts showing that the *Board members* became aware of Warren's actions or describing the nature of the information that was allegedly presented to them.  "Under Third Circuit jurisprudence, a harm is forseeable when a state actor has actual awareness, based on concrete information, of a risk of harm ... such that the actor

27

is on notice that his or her act or failure to act significantly enhances that risk of harm." Graham at *5-6 (quoting Gremo v. Karlin, 363 F.Supp.2d 771, 784-85 (E.D.Pa. 2005)). It is clear that the Verified Complaint does not allege that Defendants had any "concrete information" or actual knowledge of Warren's actions and the §1983 claims should be dismissed.

**POINT VI**

**PLAINTIFF'S "THOROUGH AND EFFICIENT" EDUCATION CLAIM SHOULD BE DISMISSED BECAUSE THE COMMISSIONER OF EDUCATION HAS JURISDICTION OVER THAT CLAIM**

**(Count 3)**

Plaintiff has asserted that Defendants' actions violated the New Jersey Constitution which states that "the Legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in the State between the ages of five and eighteen years." New Jersey Constitution, Article VIII, §4, ¶1. (Polledri Cert., Ex. A, Verified Complaint, ¶68). This claim should be dismissed because the Commissioner of the New Jersey Department of Education has jurisdiction to decide this aspect of the litigation since it arises under N.J.S.A. 18A:1-1 et seq., and Plaintiff has not exhausted her administrative remedies.

The statutes related to school laws and the State's obligation to provide a "thorough and efficient" system of public education are codified at N.J.S.A. 18A:1-1 et seq. The Legislature has vested the Commissioner of the Department of Education with the authority to decide disputes arising under those laws. "The Commissioner shall hear and determine, without cost to the parties, all controversies and disputes arising under the school laws, excepting those governing higher education, or under the rules of the state board or of the commissioner." N.J.S.A. 18A:6-9. Administrative regulations describe the procedures which govern administrative hearings and proceedings before the Commissioner. N.J.A.C. 6A:3-1.1 et seq. Decisions of the Commissioner of Education are final agency actions that may be appealed directly to the Appellate Division. N.J.S.A. 18A:6-9.1(a); N.J.A.C. 6A:4-1.3.

The courts are in agreement that the Commissioner has broad authority to decide disputes related to the school laws. "The Commissioner also has fundamental and indispensable jurisdiction over all disputes and controversies arising under the school laws. In this respect the Court has repeatedly 'reaffirmed the great breadth of the Commissioner's powers.'" Hinfey v. Matawan Regional Board of Education, 77 N.J. 514, 525 (1978)(internal citations omitted).

In _Theodore v. Dover Board of Education_, 183 N.J. Super. 407, 412 (App. Div. 1982), the plaintiff was a school employee who brought a workplace accident claim in Superior Court arising under N.J.S.A. 18A:30-2.1.    The court relied upon Hinfey and held that the litigation should have proceeded before the Commissioner "since the dispute arose under the school laws." The Appellate Division held that "the proper and orderly disposition of this controversy required the trial judge to transfer the plaintiff's claim to the Commissioner of Education pursuant to R. 1:13-4."    _Theodore_, supra, 183 N.J. Super. at 413.[3]

In the pending case, Plaintiff has a claim arising under the school laws that she is pursuing before the U.S. District Court.    Plaintiff is required to bring that claim before the Commissioner of the N.J. Department of Education in the first instance.    Since Plaintiff has not exhausted her administrative remedies and the court does not have jurisdiction over the "thorough and efficient" education claim, it should be dismissed.

---

[3] In the interest of judicial economy, the Appellate Division accepted the findings of fact made by the Law Division judge because he already presided over the trial and his conclusions were supported by the record. 183 N.J. Super. at 414.

## POINT VII

### PLAINTIFF CANNOT BRING A PERSONAL
### TITLE IX CLAIM ON HER OWN BEHALF

### (Count 5)

Plaintiff has brought a claim under Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 et seq., alleging that Defendants created a hostile environment based upon her gender.  (Polledri Cert., Ex. A, Verified Complaint, ¶89). Plaintiff is seeking both economic and non-economic damages for emotional distress, mental injury and lost wages.  (Polledri Cert., Ex. A, Verified Complaint, ¶92).  This cause of action should be dismissed because parents do not have standing under Title IX to bring a personal claim.

Title IX provides that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program activity receiving Federal financial assistance.

20 U.S.C. §1681(a).  The purpose of Title IX is to "prevent[ ] institutional discrimination on the basis of sex, not on regulating individual behavior. ... Persons acting in their individual capacities cannot be liable for discrimination under Title IX."  Young v. Pleasant Valley School District, 2008 WL 417739, *5 (M.D.Pa. 2008).

The law is clear that Plaintiff, as the parent of N.C. and B.C., does not have standing to bring a personal Title IX claim on her own behalf.  Young, 2008 WL 417739 at *6.  A parent "does not have standing to assert a personal claim under Title IX." Rowinsky v. Bryan Independent School District, 80 F.3d 1006, 1010, n. 4 (5th Cir. 1996), certif. den. 519 U.S. 861 (1996). "[T]ypically, a parent may not bring a claim under Title IX." Haines v. Metropolitan Government of Davidson County, Tennessee, 32 F.Supp.2d 991, 1000 (M.D. Tenn. 1998)(internal citations omitted).  To the extent that Plaintiff is asserting a personal claim under Title IX on her own behalf, it should be dismissed because parents do not have standing to bring such claims as a matter of law.[4]

### POINT VIII

**PLAINTIFF'S LAW AGAINST DISCRIMINATION CLAIM SHOULD BE DISMISSED BECAUSE THE LAW ONLY RECOGNIZES A CLAIM FOR STUDENT-ON-STUDENT HARASSMENT AND PLAINTIFF IS NOT AN "AGGRIEVED PERSON" UNDER THE STATUTE**

### (Count 6)

Count Six of the Verified Complaint asserts a claim under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD").  Plaintiff's theory is two-fold.  First, Plaintiffs contends that she is entitled to compensation for

---

[4] Parents may bring claims on behalf of minor children under Title IX.  Young, 2008 WL 417739 at *6.

pain, suffering and similar damages because she was subjected to a sexually-hostile environment created by Warren. (Polledri Cert., Ex. A, Verified Complaint, ¶¶97, 98, 103). Second, Plaintiff asserts that Defendants have violated her right to a "public accommodation," which includes a public school. N.J.S.A. 10:5-5(l). (Polledri Cert., Ex. A, Verified Complaint, ¶99).

Both claims should be dismissed. Although the LAD recognizes a cause of action for *student-on-student* harassment and bullying, there is no such claim under the LAD when a *parent* has been sexually harassed by a school administrator. Further, since Plaintiff is a parent who was not deprived of any educational services, she is not an "aggrieved person" under the LAD and not entitled to any relief.

## A.   Plaintiff Is Not Asserting a Student-on-Student Harassment Claim

In her brief supporting her application for injunctive relief, Plaintiff relied upon L.W. v. Toms River, 189 N.J. 381 (2007), which considered whether a school district may be liable under the LAD when students harassed another student due to his perceived sexual orientation. The student in Toms River was the subject of continuous taunting, bullying and harassment by other students in the school over the course of several years. Id. at 390-96. His mother filed a complaint against the school

district under the LAD alleging that the district failed to take corrective action in response to the harassment and "homosexual epithets" that were directed at him.   Id. at 389, 397.

The New Jersey Supreme Court decided that a plaintiff could maintain a claim under the LAD against the school district for student-on-student harassment that is based on a protected criterion.   "[W]e conclude that the LAD permits a cause of action against a school district for student-on-student harassment[.]"   Id. at 402.   The Court also ruled that the standards described in Lehmann v. Toys 'R' Us, 132 N.J. 587, 603-04 (1993), with slight modifications, would govern such claims.   Toms River, 189 N.J. at 406-07.   The Lehmann test, as modified by Toms River, requires a showing that: (1) the aggrieved student allege discriminatory conduct that would not have occurred 'but for' the student's protected characteristic; (2) a reasonable student of the same age, maturity level, and protected characteristic; (3) would consider sufficiently severe or pervasive enough to create an intimidating, hostile or offensive school environment; and (4) the school district failed to reasonably address such conduct.   Id. at 390, 402-03 (citing Lehmann v. Toys 'R' Us, 132 N.J. 587, 603-04 (1993)).

The holding of Toms River is narrow, applying in the school district context only to student-on-student harassment based upon a category that is protected by the LAD.   In the pending

34

case, Plaintiff claims that she was sexually harassed by Warren, a school administrator.  <u>Toms River</u> does not establish a cause of action under the LAD for administrator-on-parent harassment, which is the claim that Plaintiff is pressing in this litigation.  There is no legal authority that would support a cognizable LAD action under the facts alleged by Plaintiff and this cause of action should be dismissed.

**B.    <u>Plaintiff Is Not an "Aggrieved Person" Under the LAD</u>**

Plaintiff has also attempted to construct an LAD claim by alleging that there was a denial of a public accommodation under the statute.  <u>N.J.S.A.</u> 10:5-5(l).   This theory also fails because Plaintiff was not an "aggrieved" person under the statute and has no standing to bring such a claim.

Under the LAD, one may not deny a "public accommodation" to another on the basis of sex, and it is also clear that a school is a place of "public accommodation."  Specifically, the LAD provides that it is unlawful discrimination:

> [f]or any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof, . . . on account of the ... sex,... of such person, or that the patronage or custom thereat of any person of any particular ... sex ... is unwelcome,

> objectionable or not acceptable, desired or
> solicited[.]

N.J.S.A. 10:5-12(f)(1).  The LAD defines a "place of public
accommodation" to include "any educational institution under the
supervision of the State Board of Education, or the Commissioner
of Education of the State of New Jersey," including "any
kindergarten, primary and secondary school, trade or business
school, high school, academy, college and university ..."
N.J.S.A. 10:5-5(l).

However, one must be "aggrieved" by "unlawful
discrimination" before bringing a claim under the LAD.  N.J.S.A.
10:5-13.  In Toms River, the mother of a harassed student was
one of the parties and, as explained in the Appellate Division
opinion, was initially awarded $10,000 by the Director of the
Division on Civil Rights for her emotional distress brought
about by the harassment of her son.  Toms River, 381 N.J. Super.
465, 500 (App. Div. 2005).

When the matter was appealed to the Appellate Division, the
school district argued that the LAD did not provide an avenue of
relief for the mother because she was not an "aggrieved" person
as contemplated by the statute.  The Appellate Division agreed
and found that the award to the mother "had no basis in law."
Id.  The court first noted that, while the mother experienced
distress, the LAD did not permit per quod damages and there was

no cause of action "for any person other than the individual against whom the discrimination was directed." Id. (quoting Catalane v. Gillian Instrument Corp., 271 N.J. Super. 476, 500 (App. Div. 1994), certif. den. 136 N.J. 298 (1994)).

The court then looked to the definition of an "aggrieved" person in N.J.S.A. 10:5-13, and concluded that the mother was not aggrieved by unlawful discrimination because she was not "denied the advantages of a public education by reason of the bias-based harassment experienced by her son." Toms River, 381 N.J. Super. at 501. When the Toms River case was presented to the N.J. Supreme Court, the central issues were: (1) whether the LAD recognized a cause of action for student-on-student harassment; and (2) whether the school district provided effective remedial measures. Toms River, 189 N.J. at 399. The parties apparently did not challenge the denial of standing on the part of the mother and the N.J. Supreme Court did not address that issue. Toms River does not establish a cause of action under the LAD that would permit Plaintiff to bring a claim against Defendants and this claim should be dismissed at this juncture.

## CONCLUSION

Based upon the forgoing arguments it is respectfully requested that the motion be granted and the Verified Complaint be dismissed with prejudice in its entirety.

Respectfully submitted,

**Adams Stern Gutierrez &
Lattiboudere, LLC**
The Legal Center
1037 Raymond Blvd., Suite 710
Newark, New Jersey 07102
Attorneys for Defendants,
The Board of Education for the
Clifton School District, and the
Members of the Board of Education
for the Clifton School District


By: _____
            SANDRO POLLEDRI


Dated:    April 18, 2011

38