NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **DAWN COLOMBO** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. 11-00785 (CCC)** |
| **v.** | : | |
| | : | **OPINION** |
| **THE BOARD OF EDUCATION FOR** | : | |
| **THE CLIFTON SCHOOL DISTRICT,** | : | |
| **MEMBERS OF THE BOARD OF** | : | |
| **EDUCATION FOR THE CLIFTON** | : | |
| **SCHOOL DISTRICT,** | : | |
| **in their official capacity,** | : | |
| **CLIFTON HIGH SCHOOL, & JIMMIE** | : | |
| **WARREN in his official capacity,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**CECCHI, District Judge.**

### I.      INTRODUCTION

This matter has come before the Court on motion by Defendant Jimmie Warren ("Warren"), who moves to stay the proceedings pending the resolution of the criminal charges against him.[1]  For the reasons stated herein, Defendant Warren's motion to stay this proceeding is GRANTED.

### II.      BACKGROUND

Plaintiff Dawn Colombo ("Colombo") brings this suit against Defendants Board of Education for the Clifton School District and the members of the Board of Education in their official capacity (jointly, "Board Defendants"), Clifton High School, and Jimmie Warren, in his

---

[1] Warren and the Board Defendants have also moved to dismiss for failure to state a claim.

1

official capacity, for alleged violations of the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, New Jersey Law Against Discrimination, and the New Jersey Civil Rights Act.  (Compl. ¶ 1).  Colombo is the mother of two children who were students at Clifton High School at the time these events took place.  (Compl. ¶¶ 13, 44).  Plaintiff's daughter is identified as "N.C." and her son, who was a minor at the time of the events at issue, is identified as "B.C."  Defendant Warren was the principal of Clifton High School until he retired on April 1, 2011. (Compl. ¶ 9, Def. Br. 3).

According to Colombo, Warren engaged in a "continuing pattern of extremely inappropriate, unwelcome, harassing, and sexually suggestive communications with Plaintiff." (Compl. ¶ 17).  Colombo claims that Warren made sexually suggestive comments to her, asked her to perform various sex acts, exposed his penis to her, touched her breasts, and arranged a meeting in a hotel room with her.  (Compl. ¶¶ 17-40).  She contends that Warren offered to help her son, who was frequently in trouble at school, and to promote him to the next grade level, if she would perform sexual acts with Warren.  (Compl. ¶¶ 8, 10).  She further alleges that Warren refused to lift a suspension imposed on B.C. because she rejected his sexual advances.  (Compl. ¶ 42).  Colombo claims that her daughter has been harassed and ridiculed by other students as a result of Warren's actions towards Colombo.  (Compl. ¶ 44).  Colombo claims that the Board Defendants had notice of Warren's actions, but did not rectify the situation, thereby ratifying Warren's conduct.  (Compl. ¶ 25).

According to the Complaint, Warren has been charged with multiple criminal offenses included multiple counts of lewdness, sexual contact and aggravated sexual contact, criminal coercion, and luring and/or enticing.  (Compl. ¶ 45).  The criminal matter is being investigated by the Passaic County Prosecutor's Office, the Clifton Police Department, and potentially other

agencies. (*Id.*) Plaintiff brings a wide variety of claims related to Warren's conduct, including, violations of the following rights: equal protection, freedom of association, right to petition, "thorough and efficient" education, and substantive due process, pursuant to 42 U.S.C. §§ 1981, 1983, 1985. (Compl. ¶¶ 46-65, 77-86). Plaintiff also brings claims under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, the New Jersey Constitution, and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1. (Compl. ¶¶ 66-76, 87-104).

## III.   DISCUSSION

It is well-settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936) (citing *Kansas City Southern Ry. Co. v. U.S.*, 282 U.S. 760, 763 (1931)). "In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel Corp. v. Laborers' International Union*, 544 F.2d 1207, 1215 (3d. Cir. 1976). However, "it is well settled that before a stay may be issued, the [movant] must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party." *Gold v. Johns-Mansville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983) (citing *Landis*, 299 U.S. at 255)).

"A stay of a civil case where there are pending criminal proceedings is not constitutionally required, however, it may be warranted in certain circumstances." *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998). In deciding whether to stay a civil case pending the resolution of a criminal case, courts consider many factors,

including "1) the extent to which the issues in the criminal and civil cases overlap; 2) the status of the case, including whether the defendants have been indicted; 3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay; 4) the private interests of and burden on defendants; 5) the interests of the court; and 6) the public interest." *Walsh*, 7 F. Supp. 2d at 527. "However, each case must be evaluated individually . . . [and] it is still possible to obtain a stay . . . if the Government is conducting an active parallel criminal investigation." *Id.*

### A. **Do the *Walsh* Factors Apply?**

Plaintiff argues that the *Walsh* factors do not apply in the instant case because Plaintiff has sued Warren in his official capacity, as principal of Clifton High School, while the criminal indictment is against him in his individual capacity. (Pl. Br. 6). As such, Plaintiff contends that her claims against Warren should be treated as though they were brought against a government entity. (Pl. Br. 6); *see McGreevy v. Stroup*, 413 F.3d 359, 369 (3d Cir. 2005) (finding that the same analysis used to evaluate claims against a school district were to be used in evaluating claims against the school superintendent and the school principal). In support of her argument, Plaintiff cites to *Forrest v. Corzine*, 757 F. Supp. 2d 473 (D.N.J. 2010), in which an arrestee brought action against the City of Camden and Camden police officers for violations of his civil rights. *Forrest*, 757 F. Supp. 2d at 474-75. The City of Camden moved to stay the action because the police officers in question refused to participate in discovery on the matter while they were the subjects of a parallel criminal investigation. *Id.* at 474. Judge Schneider denied the motion and found that the *Walsh* factors did not apply because the City of Camden was not itself the subject of a related criminal investigation. *Id.* at 479. Moreover, Camden's Fifth Amendment rights were not at issue. *Id.* at 477.

4

The case here differs from *Forrest* because unlike the City of Camden, Jimmie Warren is both a defendant in this law suit as well as the subject of a criminal investigation and indictment. (*See* Def. Reply Br. 9). As such, his Fifth Amendment right against self-incrimination is at issue. Therefore, the Court will apply the *Walsh* factors in determining whether to grant a stay of the civil proceedings.

**B.  Application of the *Walsh* Factors**

**1.  Similarity of the Issues**

The first *Walsh* factor requires the court to examine whether the criminal and civil proceedings overlap. *Walsh*, 7 F. Supp. 2d at 527. "The similarity of issues has been termed 'the most important issue at the threshold' in determining whether or not to grant a stay." *Id.* (quoting Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (1989)). Here, the Court finds that the evidence presented demonstrates significant overlap between the civil and criminal cases. Plaintiff claims that Warren engaged in "inappropriate sexual conduct" and that he offered to help her son if she would perform sexual acts. (Compl. ¶¶ 8, 10, 17-40, 42). Likewise, the criminal indictment against Warren alleges that he offered "special treatment of students B.C. and N.C. in return for engaging in inappropriate sexual conduct with Dawn Colombo, the parent of said students." (Kantrowitz Certification, Ex. A).

Plaintiff again argues that her claim is based on the alleged inappropriate sexual conduct of Jimmie Warren in his official capacity, while the criminal case is against him in his individual capacity and therefore, the cases and issues do not overlap. (Pl. Br. 8). However, as discussed previously, Jimmie Warren is the subject of both the civil case and the criminal investigation. *See* discussion *supra* Part III.A. Whether in his official capacity or his individual capacity, the facts, evidence, and issues significantly overlap. Therefore, the Court finds that the first, and

5

most important factor, weighs in favor of a stay.

### 2. **Status of the Criminal Case**

As to the second *Walsh* factor, "the strongest case for a stay of discovery in the civil case occurs during a criminal prosecution after an indictment is returned ... [due to] the potential for self-incrimination." *Walsh*, 7 F. Supp. 2d at 527. Additionally, the right to a speedy trial reduces the potential for a long delay. *State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*, No. 01-5530, 2002 WL 31111766, at *2 (E.D. Pa. Sept. 18, 2002).

Here, Warren has been indicted and he intends to invoke his Fifth Amendment privilege against self-incrimination. (Def. Br. 12). Plaintiff contends that Warren has already waived his Fifth Amendment rights by providing a statement to Detectives for the Clifton Police Department on November 23, 2010. (Pl. Br. 8-9). In reply, Defendant argues that Warren did not waive his Fifth Amendment rights when he gave his statement to the police because that statement was not testimony. (Def. Reply Br. 11).

In *Mitchell v. U.S.*, 526 U.S. 314, 321 (1999), the Court determined that a defendant who pled guilty to a crime is permitted to assert his Fifth Amendment right later at sentencing. The Court found that while a witness may not testify about facts and then later refuse to be cross-examined about those facts, the defendant's prior statement did not waive his Fifth Amendment rights at sentencing. *Id.* at 324.

Furthermore, a witness may refuse to answer a question asked in court even if the witness previously answered that question in out-of-court interview or discussion with an investigator. *Ginyard v. United States*, 816 A.2d 21, 33 (D.C. App. 2003); *see also United States v. Rivas-Macias*, 537 F.3d 1271, 1280 (10th Cir. 2008) (finding that witness did not waive right to invoke Fifth Amendment at trial after giving pretrial unsworn statement to authorities); *United States v.*

6

*Perkins*, 138 F.3d 421, 425 (D.C. Cir. 1998) (finding that a witness did not waive Fifth Amendment privilege by making disclosure in recantation letter).

However, in-court testimony is not the only way in which the privilege's protection might be lost.  If a witness makes an admission in an affidavit submitted in a proceeding, she may lose her ability to invoke the privilege when asked about the substance of that admission later in the proceeding.  *See, e.g., In re Edmond*, 934 F.2d 1304, 1309 (4th Cir. 1991) ("An affidavit operates like other testimonial statements to raise the possibility that the witness has waived the Fifth Amendment privilege."); *OSRecovery, Inc. v. One Groupe Intern., Inc.*, 262 F.Supp. 2d 302, 309 (S.D.N.Y. 2003) (witness lost Fifth Amendment protection by making statements in affidavit during deposition); *Commonwealth v. Slonka*, 680 N.E.2d 103, 109–10 (Mass. App. Ct. 1997) (finding that witness waived Fifth Amendment privilege, if his sworn statement made to defense counsel was given voluntarily).

Here, Warren has not yet provided testimony, nor has he provided a sworn statement or affidavit; he only provided a statement to the Clifton Police Department.  (Sciarra Certification, Ex. E).  Therefore, his Fifth Amendment rights remain at issue.  Moreover, he has expressed his intention to invoke the Fifth Amendment during the discovery phase of this case and during trial. (Def. Br. 12).  Therefore, the Court finds that because an indictment has been returned in the parallel criminal proceeding and because Warren's Fifth Amendment rights are it issue, this factor weighs in favor of granting the stay.

### 3.   Prejudice to Plaintiff

Under the third *Walsh* factor, the Court must weigh the Plaintiff's interest in proceeding expeditiously against the prejudice a delay will cause to Plaintiff.  *Tucker v. New York Police Dept.*, No. 08-cv-2156, 2010 WL 703189, at \*7 (D.N.J. Feb. 23, 2010).  The mere fact that

additional time will pass does not establish prejudice to the Plaintiff. *Id.* To establish prejudice, the plaintiff must show a unique injury such as fading memories, asset dissipation, or an attempt to gain an unfair advantage from the stay. *In re Herley Indus. Secs. Litig.,* No. 06-2596, 2007 U.S. Dist. LEXIS 27201, at * 7 (E.D. Pa. Apr. 11, 2007); *see State Farm,* 2002 WL 31111766, at *2; *Walsh Sec.*, 7 F. Supp. 2d at 528.

Plaintiff contends that unless the case proceeds expeditiously, she and her family will suffer prejudice. (Pl. Br. 7). In particular, she claims that her daughter, N.C. has suffered ridicule and harassment at school due to the events at issue and unless her claims are addressed quickly and her daughter is moved to another school, this harassment will continue. (Pl. Br. 7-8). In contrast, Warren argues that "all parties will benefit by waiting for the criminal proceeding to be completed." (Def. Br. 12). He contends that once the criminal proceeding is completed, they will then have access to the trial transcript and evidence. (Def. Br. 12). He also argues that because Plaintiff's daughter is not a party to this case, this Court cannot address the issue of N.C.'s educational placement. (Def. Reply Br. 10-11). Furthermore, the Defendant argues that N.C.'s alternative educational placement should be addressed by the Commissioner of Education. (Def. Br. 11).

Defendant relies on *N.J.S.A.* 18A:6-9, which vests the Commissioner of Education with "jurisdiction to hear and determine . . . all controversies and disputes arising under the school laws." *See also Theodore v. Dover Bd. of Ed.,* 183 N.J. Super. 407, 412-13 (App. Div. 1982) (finding that disputes related to school law are not decided by trial courts); *State In re G.S.,* 330 N.J. Super. 383, 388 (Ch. Div. 2000) (noting that an appeal of a school board's decision to expel a student would be within the jurisdictional domain of the Commissioner of Education).

Based on the foregoing, the Court finds that it does not have jurisdiction to decide the educational placement for Plaintiff's daughter. Furthermore, the Court finds that Plaintiff has not established that she will suffer any additional prejudice due to the passage of time if a stay is granted. While her daughter's educational placement is a valid and significant concern for Plaintiff, it is not an issue that this Court can address. Therefore, the Court finds that this factor weighs in favor of granting a stay.

### 4. Burden on Defendant

With respect to the fourth *Walsh* factor, Defendant experiences a significant burden when he must choose between waiving his Fifth Amendment rights by defending himself in the civil lawsuit and asserting the privilege and possibly losing the civil case. *State Farm*, 2002 WL 3111176, at *3. However, it is not unconstitutional to force a defendant to make the choice between waiving his Fifth Amendment rights and losing the civil case. *Baxter v. Palmigiano*, 425 U.S. 308, 318-19 (1976).

Here, Warren argues that if the civil case proceeds, he will either be forced to waive his Fifth Amendment rights in order to defend himself in this matter or he will invoke the privilege and suffer the adverse inferences that may arise. (Def. Br. 12). He has already expressed his intention to invoke his Fifth Amendment privilege. (Def. Br. 12). Plaintiff again argues that Warren has already waived his Fifth Amendment rights. (Pl. Br. 9). However, as already discussed, Warren's Fifth Amendment rights are at issue and he has not yet waived those rights. *See* discussion *supra* Part III.B.2. Therefore, Defendant will be burdened by having to defend these parallel civil and criminal proceedings. Thus, this factor weighs in favor of granting the stay.

9

### 5. **The Interest of the Court**

The Court has an interest in the efficient management of its docket.   A stay of a civil case where there are pending criminal proceedings promotes judicial economy "because there is a reasonable expectation that the criminal investigation could clarify and define some issues in the civil matter." *United States SEC v. Ott*, 2006 U.S. Dist. LEXIS 86541 (D.N.J. Nov. 29, 2006).

While Plaintiff is entitled to the expeditious resolution of her lawsuit, Defendant's assertion of his Fifth Amendment right will result in a numerous privilege issues that will delay discovery.  Furthermore, a stay in the civil matter will further the goal of discovery and promote efficiency, since many of the legal and factual issues in this case may be resolved in the criminal proceeding. *See Soroush v. Ali*, No. 09-3703, 2009 WL 3467897, at *3 (E.D. Pa. Oct. 28, 2009). Therefore, this factor also weighs in favor of granting a stay.

### 6. **The Public Interest**

The public interest is promoted by allowing a complete, unimpeded criminal investigation. *Maloney v. Gordon*, 328 F. Supp. 2d 508, 510 (D. Del. 2004).  Furthermore, "the public's interest in the integrity of the criminal case is entitled to precedence of the civil litigant." *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 74 (W.D.N.Y. 2003).  Plaintiff argues that the public has an interest in scrutinizing the officials who are charged with overseeing children.  (Pl. Br. 9-10).  However, civil litigation is not the only avenue used to protect this interest.  In fact, the detectives on the criminal matter are furthering this interest with their investigation.  Thus, the criminal matter should be able to continue without the interference of the civil matter.  The Court finds that this factor weighs in favor of granting a stay.

Plaintiff has asked that a stay should only be granted regarding the case against Warren, if at all. (Pl. Br. 10). However, Plaintiff's claims relate directly to Warren's alleged actions. (*See* Compl. 17). Therefore, discovery with regard to the Board Defendants will likely be impeded, or affected, when Warren invokes his Fifth Amendment privilege. Thus, in the interest of efficiency and in avoiding piecemeal litigation, the Court finds that the stay is granted with regard to all of the parties.

## IV.  CONCLUSION

In sum, Defendant's motion for a stay pending the outcome of the related criminal proceedings is GRANTED. Having considered each of the *Walsh* factors, this Court will stay all of Plaintiff's civil claims pending the outcome of the related criminal proceedings. This matter, and all applications and motions that are pending at the time of this Opinion, may hereby be reopened upon application of either party within ninety days of the conclusion of the criminal proceedings. In addition, within sixty (60) days of the date of this decision, the parties shall update the Court as to the status of the criminal proceedings.

An appropriate Order follows.

_____
**CLAIRE C. CECCHI, U.S.D.J.**

DATED: _____November 4_____, 2011

11