**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAWN COLOMBO, | Civil Action No.: 2:11-cv-00785 |
| Plaintiff, | Consolidated with: |
| | Civil Action No.: 2:12-cv-07132 |
| v. | |
| | **OPINION** |
| THE BOARD OF EDUCATION FOR THE CLIFTON SCHOOL DISTRICT, ET AL., | |
| Defendants. | |
| N.C. Minor, Individually, by and through her parent and Guardian Ad Litem, D.C., and BRANDON COLOMBO, | |
| Plaintiffs, | |
| v. | |
| THE BOARD OF EDUCATION FOR THE CLIFTON SCHOOL DISTRICT, ET AL., | |
| Defendants. | |

**CECCHI, District Judge.**

## I.    INTRODUCTION

This matter comes before the Court upon the motions of Defendants Jimmie Warren ("Warren"), and the Clifton Board of Education, Members of the Clifton Board of Education, Clifton High School, Richard Tardalo, Antony Presley, Pasquale Orsini, John Lopez, Peter Cumba, and Pat DeLotto (collectively, the "Board Defendants,"[1] and collectively with Warren, the "Defendants") to dismiss the Amended Complaint of Plaintiffs N.C. and Brandon Colombo

---

[1] *See* ECF No. 129 (clarifying for the Court that the following defendants filed the motion to dismiss at ECF No. 104: "(1) Clifton Board of Education; (2) Members of the Clifton Board of Education; (3) Clifton High School; (4) Richard Tardalo; (5) Antony Presley; (6) Pasquale Orsini; (7) John Lopez; (8) Peter Cumba; and (9) Pat DeLotto."

("Brandon," and collectively with N.C., "Plaintiffs").[2] (ECF Nos. 103, 104). The motions are opposed by Plaintiffs. (ECF Nos. 111-1, 111-5). The motions are decided without oral argument pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motions to dismiss are granted.

## II.   BACKGROUND

In the fall of 2008, Brandon began his freshman year at Clifton High School. (ECF No. 91 ¶ 20). "Brandon was a special education student with an Individualized Education Program ("IEP")," who was repeating his freshman year for the second time. (*Id.* ¶ 38). Shortly after beginning school, Brandon "experienced disciplinary problems and was suspended." (*Id.* ¶ 20). Upon receiving notice of Brandon's suspension, his mother ("Colombo") contacted Warren, the principal of Clifton High School, (*id.* ¶ 21), and set up an appointment to meet with Warren the following day. (*Id.* ¶ 22).

Plaintiffs allege that during Warren and Colombo's appointment, "Warren agreed to withdraw Brandon's suspension" and thereafter "engaged in a continuing pattern of extremely inappropriate, unwelcome, harassing and sexually suggestive communications with [Colombo]," including "inappropriate sexual touching." (*Id.* ¶¶ 23-24). Plaintiffs contend that although Colombo "sought to legitimately discuss her son's academic performance, his behavior issues at the High School, and his overall social education well-being in school," Warren's actions persisted. (*Id.* ¶ 25). Plaintiffs maintain that when Colombo refused Warren's requests, such as asking Colombo to bring Warren food or coffee, "Warren stated to [Colombo] not to call [him]

---

[2] The Court notes that Defendants also filed separate motions to dismiss Plaintiffs' mother's claims, which were granted in part and denied in part on October 31, 2016. (ECF No. 90).

the next time Brandon [got] in trouble." (*Id.* ¶ 26).

Towards the end of the school year, Warren contacted Colombo to inform her that Brandon had been promoted from freshman to sophomore. (*Id.* ¶ 27). Warren allegedly told Colombo "that she owed him because no one within the District wanted to promote Brandon to a sophomore." (*Id.*). Plaintiffs further allege that "Warren deliberately changed some of Brandon's grades . . . to misleadingly demonstrate that Brandon had successfully completed his [f]reshman academic requirements." (*Id.* ¶ 28). In return, and to ensure Brandon would face no disciplinary problems in the future, Warren allegedly told Colombo to "perform a sexual act upon him." (*Id.* ¶ 29).

Despite Colombo's refusal, Warren's actions purportedly continued, including "insisting on having a meeting to discuss a disciplinary action against Brandon in a hotel room," "inappropriate touching," "requests for several sexual favors," and "exposing himself to [Colombo]." (*Id.* ¶ 30). Plaintiffs allege that on one occasion, Warren gave Colombo "a Louis Vuitton purse worth approximately $1,000," because Warren "felt bad about what he had done" and did not want Colombo to tell anyone. (*Id.* ¶ 31).

According to Plaintiffs, "Members of the Board of Education, administrators within the District . . . and other agents and employees of Defendants were aware of Warren's activities and took no action in response." (*Id.* ¶ 32). Colombo allegedly: (1) called the superintendent of Clifton High School to discuss Warren's conduct, but her calls went unreturned; and (2) informed the dean of students about Warren's conduct, but the dean of students took no action. (*Id.* ¶¶ 32-33).

In the fall of 2010, Plaintiffs maintain that "Warren alleged that Brandon was under the influence of alcohol and/or drugs and insisted that he be sent for testing." (*Id.* ¶ 41). Plaintiffs further allege that Warren demanded "Brandon be placed in an in-patient program" but the "center refused and Brandon tested negative for drugs and alcohol." (*Id.*). Shortly thereafter, Plaintiffs

3

contend that Colombo, in preparation of filing a criminal complaint against Warren, told Plaintiffs about Warren's misconduct for the first time. (*Id.* ¶ 42).

Upon the criminal complaint becoming public, Plaintiffs allege that they "endured significant harassment, intimidation[,] and bullying." (*Id.* ¶ 43). "Students would constantly approach Brandon to ask him questions about the incidents" and "made constant confrontational comments to Brandon as a result of the allegations." (*Id.* ¶¶ 44-45). "Brandon no longer felt comfortable leaving his classroom," and was allegedly at no time contacted by Clifton High School "to help him navigate through this difficult period in school," (*id.* ¶¶ 46-48), despite Colombo's reporting of the harassment to various administrators. (*Id.* ¶ 50). Ultimately, Brandon completed "his high school education at the Board of Education in Clifton ("Home Education")." (*Id.* ¶ 49).

Plaintiffs allege that N.C. experienced the same hostility at school. (*Id.* ¶ 51). "N.C. was consistently approached by various students and teachers and treated in a hostile manner. The students would consistently make negative comments to N.C. about her mother and negative comments about N.C." (*Id.* ¶ 52). Plaintiffs further contend that Colombo's "pleas for help to the administration went unanswered" and the "school took little or no action to address the harassment." (*Id.* ¶¶ 53, 56). "As a result, N.C. began to have anxiety and panic attacks" and "has been to the hospital over ten (10) times as a result of the panic attacks." (*Id.* ¶ 55).

According to Plaintiffs, as "a direct result of the hostility N.C. faced at school," she "missed a number of school days during her spring semester." (*Id.* ¶ 57). N.C.'s request to make up her missed exams was allegedly denied, forcing N.C. to repeat her freshman year. (*Id.* ¶¶ 57-58). Plaintiffs contend that subsequently, N.C. was "'pushed' through school," completing "her sophomore year, her junior year[,] and senior year in one (1) school year." (*Id.* ¶ 59). Despite failing her proficiency examination on two occasions, N.C. passed on her third try and "received

her high school diploma." (*Id.* ¶¶ 60-61).

On November 1, 2016, Plaintiffs filed their Amended Complaint in this Court. (*Id.*). On December 15, 2016, Warren and the Board Defendants filed separate Motions to Dismiss. (ECF Nos. 103, 104). Plaintiffs and Defendants subsequently filed a number of submissions, which have been duly considered by the Court.

## III.  LEGAL STANDARD

### A.  Rule 12(b)(1)

Courts must grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) if the court determines that it lacks subject-matter jurisdiction over a claim. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "Generally, where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *The Connelly Firm, P.C. v. U.S. Dep't of the Treasury*, No. 15-2695, 2016 WL 1559299, at *2 (D.N.J. Apr. 18, 2016) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

The first step in evaluating a 12(b)(1) motion is determining whether the 12(b)(1) motion presents a facial attack or a factual attack. *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014). For facial attacks, "the court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). For factual attacks, however "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations ... [and] the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.*

**B.    Rule 12(b)(6)**

For a complaint to survive dismissal pursuant to Fed. R. Civ. P. 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, "[a] pleading that offers 'labels and conclusions' . . . will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted).

**IV.    DISCUSSION**

**A.    Fourteenth Amendment Equal Protection**

**1.    Count One**

Count One of Plaintiffs' Amended Complaint alleges that Defendants violated Plaintiffs' rights to equal protection under the law as guaranteed by the Fourteenth Amendment, which provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, Plaintiffs "must demonstrate that [they] received different treatment than other similarly situated persons and that the disparate treatment was based on [their] protected class status." *Kasper v. Cty. of Bucks*, 514 F. App'x 210, 214 (3d Cir. 2013) (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990)). "Thus, to survive a motion to dismiss, the complaint must allege facts that would establish that the plaintiff is '(1) a member of a protected

6

class; (2) similarly situated to members of an unprotected class; and (3) treated differently from members of the unprotected class.'" *Raven v. City of Phila.*, No. 15-4146, 2016 WL 320574, at *6 (E.D. Pa. Jan. 26, 2016) (citations omitted).

Defendants argue that the Amended Complaint does not allege any facts that would support a claim for § 1983 liability based on a violation of the equal protection clause. (ECF Nos. 103-2 at 11-14, 104-1 at 9-11). The Amended Complaint alleges that "Plaintiffs were afforded a lower level of protection as opposed to other students at Clifton High School as a result of N.C.'s gender, and as a result of Brandon's disabilities." (ECF No. 91 ¶ 66). Although the Amended Complaint identifies N.C.'s gender and Brandon's disability as their purported protected classes, the Amended Complaint identifies *no* similarly situated members of unprotected classes (i.e., similarly situated male students and non-disabled students). Further, the Amended Complaint does not identify how female students or disabled students were treated differently from similarly situated male students or non-disabled students based on being members of those classes.

Although Plaintiffs argue that on a motion to dismiss, their contention that "Plaintiffs received a lower level of protection that was motivated by disability and gender" suffices, (ECF Nos. 111-1 at 11, 111-5 at 7), this argument fails. *See D'Altilio v. Dover Twp.*, No. 06-1931, 2007 WL 2845073, at *8 (M.D. Pa. Sept. 26, 2007) ("To avoid dismissal, a plaintiff must allege both protected-class status and differential treatment of similarly situated non-class members." (citing *Keenan v. City of Phila.*, 983 F.2d 459, 465 (3d Cir. 1992)); *see also id.* ("Mere harassment based on protected-class status without identification of similarly situated individuals outside the class will not support an equal protection violation." (citing *Hudson v. Coxon*, 149 F. App'x 118, 121 (3d Cir. 2005)).

When alleging the existence of individuals outside the protected class, a plaintiff

> "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not survive dismissal.

*Id.* (alterations in original) (quoting *Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005)). As such, Plaintiffs have not pled facts sufficient to allege a protected-class equal protection violation, and their claim will be dismissed.

### 2. Count Two

Count Two of Plaintiffs' Amended Complaint also alleges that Defendants violated Plaintiffs' rights to equal protection under the law as guaranteed by the Fourteenth Amendment. Unlike Count One, however, Count Two does not allege Plaintiffs were treated differently from members of unprotected classes, but rather argues:

> The above enumerated actions by Defendants and actions which Defendants have stated they intend to engage in violate the plaintiffs' right to be free from intimidation by other students, the right to be free from physical intrusions as well as psychological attacks that cause students to question their self-worth and their rightful place in society.

(ECF No. 91 ¶ 75). On the face of Plaintiffs' Amended Complaint, it is unclear how this contention gives rise to an equal protection violation. Read liberally, however, the Court construes Plaintiffs' contention as a "class of one" equal protection claim.

"An Equal Protection claim can in some circumstances be sustained if the plaintiff 'claims that she has been irrationally singled out as a so-called "class of one."'" *Allen v. Baylor*, No. 13-4386, 2014 WL 1464788, at *3 (D.N.J. Apr. 15, 2014) (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008)). "To state a 'class-of-one' equal protection claim, a plaintiff needs to 'allege[] that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Turner v. Doe*, No. 15-5942, 2015 WL 5455669, at *3 (D.N.J. Sept. 15, 2015) (alteration in original) (quoting *Vill. of Willowbrook v.*

8

*Olech*, 528 U.S. 562, 564 (2000)). "[A]t the very least, to state a claim under that theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Id.* (alteration in original) (citations omitted).

Here, Plaintiffs do not allege the existence of any similarly situated students. As such, Plaintiffs have not pled facts sufficient to allege a "class of one" equal protection claim. *See id.* (finding that plaintiff failed to state a claim upon which relief may be granted when plaintiff did not allege the existence of similarly situated individuals); *Mann v. Brenner*, 375 F. App'x 232, 238-39 (3d Cir. 2010) (noting that although plaintiffs are not required to "identify in the complaint specific instances where others have been treated differently," without any allegation regarding other similarly situated individuals, plaintiff's "class of one" equal protection claim failed to state a claim (citations omitted)); *see also Ragland v. Lanigan*, No. 14-0458, 2014 WL 2534928, at *5 (D.N.J. June 4, 2014) ("Plaintiff's sole allegation in the complaint with respect to this claim is that he was treated differently than similarly situated [individuals]. This amounts to nothing more than a thread-bare recital of the first element of stating a 'class-of-one' equal protection claim without any further factual allegations. This is insufficient to state an equal protection claim."). Accordingly, Plaintiffs' Fourteenth Amendment equal protection claim is dismissed.

### B.    Due Process - Education

#### 1.    Substantive Due Process

Count Three of Plaintiffs' Amended Complaint alleges that Plaintiffs "were deprived of a property right to a free public education." (ECF No. 91 ¶ 87). To the extent that Plaintiffs argue that such deprivation constitutes a substantive due process violation, their argument is without merit.

To prevail on a substantive due process claim challenging a state actor's conduct, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." Whether a property interest is protected for purposes of *substantive due process* is a question that is not answered by reference to state law. Rather, for a property interest to be protected for purposes of *substantive due process*, it must be "fundamental" under the United States Constitution.

*Hill v. Borough of Kutztown*, 455 F.3d 225, 234 n.12 (3d Cir. 2006) (citations omitted). "If the interest is not 'fundamental' . . . the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000). The Third Circuit has explicitly held that education is not a fundamental right entitled to substantive due process protection. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 (3d Cir. 2007) (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973)). Thus, Plaintiffs' claim that their substantive due process rights were violated fails.[3]

## 2. Procedural Due Process

Plaintiffs further argue that "Plaintiffs were deprived of [the property right to a free public education] without due process." (ECF No. 91 ¶ 88). Construing Plaintiffs' Amended Complaint liberally, Plaintiffs seem to raise a procedural due process argument.

To state a claim under § 1983 for deprivation of procedural due process rights, a

---

[3] Although the Court recognizes that courts have applied rational basis review to substantive due process claims related to public education rights, *see, e.g.*, *M.G. v. Crisfield*, 547 F. Supp. 2d 399, 408 (D.N.J. 2008); *Bell v. Pennsbury Sch. Dist.*, No. 09-5967, 2011 WL 292241, at *5 (E.D. Pa. Jan. 31, 2011), the Third Circuit holds that "when a plaintiff challenges the validity of *a legislative act*, substantive due process typically demands that the act be rationally related to some legitimate government purpose. In contrast, when a plaintiff challenges *a non-legislative state action* . . . . [i]f the interest is not 'fundamental' . . . the government action is entirely outside the ambit of substantive due process and will be upheld so long as the state satisfies the requirements of procedural due process." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000) (emphasis added). Because the instant case does not involve a legislative act, the Court finds application of rational basis review unwarranted. *See id.*

plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law."

*Hill*, 455 F.3d at 233-34 (citations omitted). "[I]t is well-settled that state-created property interests

. . . are entitled to protection under the procedural component of the Due Process Clause."

*Nicholas*, 227 F.3d at 140.

In New Jersey, the right to a free, public education is recognized as a legitimate property

interest. *See M.G. v. Crisfield*, 547 F. Supp. 2d 399, 408 (D.N.J. 2008) ("New Jersey law clearly

provides . . . the right to a free public education."). As such, Plaintiffs have sufficiently alleged

the first element of a procedural due process claim. (*See* ECF No. 91 at ¶¶ 84, 87-88).

As to the second requirement:

> In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate. "[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." A due process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.

*Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (alteration in original) (citations omitted). Here,

Plaintiffs have not provided any information in their Amended Complaint about what processes

were available to them, whether they took advantage of those processes, or why those processes

were unavailable or patently inadequate.[4] Rather, Plaintiffs argue that they "were deprived of their

right to a 'free public education' without any proceedings at all. No hearing(s) was/were held or

---

[4] Conversely, the Board Defendants note that Plaintiffs could have "fil[ed] a petition with the N.J. Department of Education as required by N.J.A.C. 6A:3-1.1 *et seq.*" (ECF No. 104 at 23).

offered to the Plaintiffs." (ECF Nos. 111-1 at 21, 111-5 at 18). Without more, Plaintiffs'

procedural due process claim fails to state a claim upon which relief may be granted.

## C.  Due Process – Intrusions on Personal Activity

### 1.  Substantive Due Process

Plaintiffs allege in Count Four of their Amended Complaint:

> Plaintiffs had a right to be free from unjustified intrusions on personal activity, such
> as the pervasive harassment Plaintiffs suffered from both staff and students. This
> pervasive harassment was a direct and logical result of Principal Warren's actions
> against [Colombo]. The Defendants created this danger by hiring Principal Warren
> and ignoring complaints of his unprofessional behavior, and further, Defendants
> had a special relationship with the Plaintiffs, and a duty to protect them as their
> educators. The above enumerated actions by Defendants are in violation of
> Plaintiffs' *substantive due process rights* as Warren's conduct shocks the
> conscience or otherwise offends judicial notions of fairness.

(ECF No. 91 ¶¶ 98-101).

"The Third Circuit has recognized that '[i]ndividuals have a constitutional liberty interest

in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth

Amendment.'" *Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 66 F. Supp. 3d 570, 580 (M.D. Pa.

2014) (alteration in original) (citations omitted), *aff'd*, 644 F. App'x 172 (3d Cir. 2016). Plaintiffs

contend that this liberty interest was violated as a result of "pervasive harassment . . . from both

staff and students." (ECF No. 91 ¶ 98). Because Plaintiffs' claims of harassment against staff and

students implicate different issues, each will be addressed in turn.

### a)  Staff

"The Third Circuit has developed a four-part test for analyzing claims of physical abuse

against a school official." *L.H. v. Pittston Area Sch. Dist.*, 130 F. Supp. 3d 918, 929 (M.D. Pa.

2015), *aff'd*, 666 F. App'x 213 (3d Cir. 2016). Here, Plaintiffs have only alleged verbal abuse by

Clifton High School staff. (ECF No. 91 ¶ 98). "However, as with claims of physical abuse, claims

12

involving '[n]on-physical types of harassment, including verbal abuse, require the same "shocks the conscience" analysis.'[5] *L.H.*, 130 F. Supp. 3d at 929 (citations omitted). "Typically, courts considering claims of verbal abuse by state actors have found that such conduct alone was not severe enough to rise to the level of a substantive due process violation." *Id.* (citing cases).

Here, Plaintiffs allege that "teachers . . . treat[ed Brandon] differently and alienat[ed] him," "teachers . . . acted hostile toward N.C.," and "N.C. was consistently approached by various . . . teachers and treated in a hostile manner." (ECF No. 91 ¶¶ 47, 51-52). Under the standard set forth above, the Court cannot find that Plaintiffs sufficiently alleged conduct which rises to the level of "conscience-shocking" to support a substantive due process claim. *See L.H.*, 130 F. Supp. 3d at 929 (citing cases that found plaintiffs failed to state substantive due process claims where teachers called students prostitutes, bimbos, fatsos, retarded, and stupid). As such, Plaintiffs have failed to state a claim upon which relief may be granted.

### b)     Students

Regarding the conduct of Plaintiffs' classmates, "[g]enerally, the Due Process Clause does not impose an affirmative duty upon the state to protect citizens from the acts of private individuals." *Sanford v. Stiles*, 456 F.3d 298, 303-04 (3d Cir. 2006). The Third Circuit, however, has "explicitly recognized two exceptions to this general rule. First, the state has a duty to protect or care for individuals when a 'special relationship' exists. Second, the state has a duty when a 'state-created danger' is involved." *Id.* at 304. Plaintiffs argue that both of these exceptions apply.

---

[5] Although Plaintiffs' Amended Complaint alleges Warren's conduct shocks the conscience, the relevant inquiry before the Court is whether the "pervasive harassment Plaintiffs suffered" shocks the conscience. *See L.H. v. Pittston Area Sch. Dist.*, 130 F. Supp. 3d 918, 929 (M.D. Pa. 2015), *aff'd*, 666 F. App'x 213 (3d Cir. 2016).

(ECF No. 91 ¶ 100).

### (1)    Special Relationship

"[P]ublic schools, as a general matter, do not have a *constitutional* duty to protect students from private actors." *Morrow v. Balaski*, 719 F.3d 160, 170 (3d Cir. 2013). Nonetheless, a public school may have a duty to protect students from private actors if a special relationship exists between them. *See Sanford*, 456 F.3d at 304.

> [A] special relationship [may arise] between a *particular* school and *particular* students under certain unique and narrow circumstances. However, any such circumstances must be so significant as to forge a different kind of relationship between a student and a school than that which is inherent in the discretion afforded school administrators as part of the school's traditional *in loco parentis* authority or compulsory attendance laws.

*Morrow*, 719 F.3d at 171. Here, Plaintiffs allege that "Defendants had a special relationship with the Plaintiffs, and a duty to protect them as their educators." (ECF No. 91 ¶ 100). Plaintiffs point to no facts as to how Defendants' relationship with Plaintiffs differed from the inherent relationship between public schools and their students, and therefore Plaintiffs have failed to sufficiently plead that a special relationship existed. *See Morrow*, 719 F.3d at 171-72 ("The circumstances . . . under the facts alleged here are not 'certain narrow' circumstances at all. Instead, they are endemic in the relationship between public schools and their students . . . . The fact that 'the specific threat at issue in this case' was 'a violent bully subject to two restraining orders,' does not necessarily give rise to a special relationship." (citations omitted)); *Bridges*, 66 F. Supp. 3d at 582 (holding that school district and elementary school student did not have a special relationship, so as to give rise to constitutional duty under Due Process Clause to protect student from being bullied by other students).

14

## (2)    State-Created Danger

Plaintiffs next argue that Defendants had a duty to protect Plaintiffs because Defendants created a situation that was dangerous to Plaintiffs. (ECF No. 91 ¶ 100). The Third Circuit has "recognized that a state actor may be held liable under the 'state-created danger' doctrine for creating a danger to an individual in certain circumstances." *Henry v. City of Erie*, 728 F.3d 275, 281 (3d Cir. 2013). Under this theory, "liability may attach where the state acts to *create or enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Morrow*, 719 F.3d at 177. To prevail on this theory, Plaintiffs must show:

> 1) [T]he harm ultimately caused was foreseeable and fairly direct; 2) a state actor acted with a degree of culpability that shocks the conscience; 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Id.* Here, Plaintiffs argue that the "pervasive harassment [that they suffered] was a direct and logical result of Principal Warren's actions against [Colombo]" and that the "Defendants created this danger by hiring Principal Warren."[6] (ECF No. 91 ¶¶ 99-100). Plaintiffs further state "[u]pon information and belief, the [Board D]efendants knew that Jimmie Warren had been accused of sexual harassment in the past, while in a position of authority at another school in the Clifton District." (*Id.* ¶ 37). The Court must first consider whether the harm Plaintiffs suffered was foreseeable.

---

[6] Although Plaintiffs do not say so explicitly, it is clear to the Court that this allegation applies to the Board Defendants, and not to Warren. As such, this argument will only be considered as to the Board Defendants.

> Foreseeability exists if there is an awareness on the part of the state actors that rises to [the] level of actual knowledge or "an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." Put another way, at the time of its state action, the [Defendants] must have had sufficient reason to be aware of the risk that the harm might occur.

*Reichert v. Pathway Sch.*, 935 F. Supp. 2d 808, 818 (E.D. Pa. 2013) (citations omitted). Indeed, if the Board Defendants were informed of Warren's alleged history of sexual harassment, the Court would likely find that the Board Defendants had an awareness of the risk that by hiring Warren, students may fall victim to sexual harassment at the hands of Warren.

Here, however, it was Colombo, Plaintiffs' mother, not Plaintiffs, that purportedly suffered sexual harassment from Warren. Plaintiffs, conversely, suffered teasing and bullying from other students resulting from the following series of events: (1) Warren was hired as principal of Clifton High School; (2) Brandon suffered disciplinary problems, resulting in an appointment between Warren and Colombo; (3) thereafter, Warren allegedly engaged in a pattern of sexual misconduct towards Colombo; (4) Colombo reported Warren's conduct to the police; and (5) after an investigation and media coverage, students at Clifton High School learned of Warren's purported misconduct against Colombo. (ECF No. 91).

The Court finds that the teasing and bullying Plaintiffs suffered was too attenuated to constitute a foreseeable or fairly direct consequence of hiring Warren. *See Graham v. Huevel*, No. 10-1268, 2011 WL 1256607, at *5 (D.N.J. Mar. 28, 2011) (finding plaintiff could prove no set of facts to establish foreseeability when defendant's conduct was "too attenuated to have caused" plaintiff's harm); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 909 (3d Cir. 1997) (holding that "defendants, as a matter of law, could not have foreseen . . . the tragic harm [because it] was too attenuated from defendants' actions to support liability"). Accordingly, Plaintiffs' contention fails.

16

Plaintiffs further allege that the Board "Defendants created this danger by . . . ignoring complaints of [Warren's] unprofessional behavior." (ECF No. 91 ¶ 100). Without acknowledging whether the first three elements enumerated above have been met:

> The Third Circuit has made clear that under the fourth element, liability "is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger. It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause."

*Bridges*, 66. F. Supp. 3d at 583 (citations omitted). "Accordingly, to establish the fourth element, Plaintiffs must identify 'an affirmative action, rather than inaction or omission.'" *Id.* (citations omitted). Because ignoring complaints of Warren's unprofessional behavior constitutes passive inaction, it is not sufficient to state a cause of action under the state-created danger exception. *See Morrow*, 719 F.3d at 179; *Bridges*, 66 F. Supp. 3d at 584. As such, Plaintiffs' claim that their substantive due process rights were violated is dismissed.

## 2. Procedural Due Process

Although Plaintiffs argue in Count Four of their Amended Complaint that the "above enumerated actions, and the Defendants' failure to provide the Plaintiffs with a hearing, are in violation of Plaintiffs' procedural due process rights," (ECF No. 91 ¶ 102), only the substantive component of the Due Process Clause is at issue here. *See Bridges*, 66 F. Supp. 3d at 580 (explaining that where "Plaintiffs assert[ed] that [D.B.] was deprived of his liberty interest and right to bodily integrity as a result of student-on-student bullying in first grade and teacher-on-student bullying in second grade," "[o]nly the substantive component of the Due Process Clause [wa]s at issue"). Indeed, Plaintiffs clarify in their briefing that their procedural due process claim relates to Plaintiffs' purported property right to a free, public education, (ECF Nos. 111-1 at 21, 111-5 at 18), as discussed in Section IV.B.2, *supra*. As such, the Court dismisses any claim of procedural due process violations arising from Count Four of Plaintiffs' Amended Complaint.

## D.    Education Amendments of 1972

Count Five of Plaintiffs' Amended Complaint alleges violations of Title IX of the Education Amendments of 1972 ("Title IX"), maintaining that "Defendants' actions against plaintiff, N.C., constituted sexual harassment and created a hostile learning environment against plaintiffs because of and based upon N.C.'s gender." (ECF No. 91 ¶ 111). Because "Plaintiffs voluntarily agree[d] to withdraw Count [Five] of the Amended Complaint alleging claims under Title IX of the Education Amendments of 1972" against Warren, (ECF No. 111-1 at 22), the Court will only consider Plaintiffs' argument as against the Board Defendants.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). To survive a motion to dismiss on a Title IX claim, "it is true that [a] plaintiff does not need to provide detailed factual support for its allegations . . . [but] the plaintiff's allegations must amount to more than mere conclusory allegations." *Butler v. Mountain View Sch. Dist.*, No. 12-2038, 2013 WL 4520839, at *7 (M.D. Pa. Aug. 26, 2013); *see also Winter v. Pa. State Univ.*, 172 F. Supp. 3d 756, 775 (M.D. Pa. 2016) ("A plaintiff alleging racial or gender discrimination by a university [under Title IX] must do more than recite conclusory assertions." (alteration in original) (citations omitted)).

Here, the Board Defendants argue that "N.C. has not pled a harassment claim under Title IX" because "[t]here is no allegation in the Amended Complaint that the harassment and teasing was motivated by N.C.'s gender. Rather, the pleading makes clear that the alleged harassment and hostile environment was caused by the alleged relationship between . . . Colombo and Warren." (ECF No. 104-1 at 24-25). Plaintiffs maintain, however, that their assertion that "Defendant's

actions against plaintiff, N.C., constituted sexual harassment and created a hostile learning environment against plaintiffs *because of and based upon N.C.'s gender*," is enough to survive a motion to dismiss. (ECF No. 111-5 at 19).

The Court agrees with the Board Defendants. Plaintiffs' statement that N.C. suffered sexual harassment and a hostile learning environment "because of and based upon N.C.'s gender" is wholly conclusory. Plaintiffs provide no facts in support of this allegation and as such, their claim is dismissed. *See Tafuto v. N.J. Inst. of Tech.*, No. 10-4521, 2011 WL 3163240, at *3 (D.N.J. July 26, 2011) ("Plaintiff's minimal effort—an attempt to provide 'threadbare recitals of [the] cause of action's elements, supported by mere conclusory statements'—convinces this Court to dismiss Plaintiff's Title IX . . . claim." (alteration in original) (citations omitted)); *Harris v. Saint Joseph's Univ.*, No. 13-3937, 2014 WL 1910242, at *4 (E.D. Pa. May 13, 2014) ("A plaintiff alleging racial or gender discrimination by a university [under Title IX] must do more than recite conclusory assertions." (alteration in original) (citations omitted)).

### E.    Individuals with Disabilities Education Act and Rehabilitation Act

Count Six of Plaintiffs' Amended Complaint is brought pursuant to the Individuals with Disabilities Education Act ("IDEA") and Section 504 of the Rehabilitation Act ("Section 504"). Through the IDEA, 20 U.S.C. § 1400, *et seq.*, the federal government provides funding to assist states in educating children with disabilities living within their borders. 20 U.S.C. § 1412(a)(1)(A). The IDEA requires that a state receiving federal education funding provide a "free appropriate public education" ("FAPE") to disabled children. *Id.* Section 504 prohibits disability discrimination by school districts receiving federal financial assistance, providing that:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . .

29 U.S.C. § 794(a).

Defendants argue that this Court does not have subject matter jurisdiction over Plaintiffs' IDEA and Section 504 claims because Plaintiffs failed to exhaust their administrative remedies pursuant to the requirements of the IDEA. (ECF Nos. 103-2 at 23-25, 104-1 at 26-30). Plaintiffs do not dispute that their administrative remedies under the IDEA remain unexhausted; rather, they respond that "there is no need to exhaust administrative remedies" because such exhaustion would be futile. (ECF Nos. 111-1 at 22-24, 111-5 at 19-21). Plaintiffs further argue that their Section 504 claim is not subject to the IDEA exhaustion requirements. (ECF Nos. 111-1 at 24-25, 111-5 at 21-22).

### 1.    The Exhaustion Requirement

Pursuant to the IDEA, a district court has subject matter jurisdiction over civil actions seeking relief available under the IDEA only after the plaintiffs exhaust their administrative remedies. 20 U.S.C. § 1415(l) ("[B]efore the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter."). The Third Circuit has held that this provision applies to claims brought under Section 504 of the Rehabilitation Act. *See Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014) (holding that the IDEA "bars plaintiffs from circumventing [the] IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute—*e.g.*, . . . section 504 of the Rehabilitation Act" (alteration in original) (citations omitted)).

## 2. Applicability of the IDEA's Exhaustion Requirement

"[D]etermining if the IDEA's administrative process must be exhausted before bringing claims in federal court turns on whether the parties could have asserted the claims under the IDEA. Intertwined with this inquiry is whether the claim could have been remedied by the IDEA's administrative process." *Id.* at 273. Thus, because "[t]he IDEA affords parents of a disabled child the opportunity to present a complaint 'with respect to *any* matter *relating* to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child[,]'" the relevant inquiry is whether the Plaintiffs' claims "relate" to the identification, evaluation, or educational placement of a disabled student. *Id.* at 274 (citing 20 U.S.C. § 1415(b)(6)(A)).

Plaintiffs allege that Defendants violated Section 504 by failing "to protect Brandon from . . . severe, pervasive[,] and objectively offensive harassment." (ECF No. 91 ¶ 120). The alleged result of Defendants' failure was, *inter alia*, exclusion "from participation in . . . educational benefits and . . . discrimination." (*Id.* ¶ 128). The Court finds that Plaintiffs' claim relates to the identification, evaluation, and educational placement of a disabled student. *See M.S. v. Marple Newtown Sch. Dist.*, 635 F. App'x 69, 72 (3d Cir. 2015) (holding that the parents of a high school student were required to exhaust the IDEA administrative remedies before bringing a Section 504 claim against the school district because a claim arising out of harassment by two fellow students intrinsically concerned the student's educational placement under the IDEA and related to the district's duty to provide an appropriate public education to the student under the IDEA); *M.M. v. Tredyffrin/Easttown Sch. Dist.*, No. 06-1966, 2006 WL 2561242, at *8 (E.D. Pa. Sept. 1, 2006) ("Furthermore, Plaintiffs' Section 504 claim is within the ambit of the IDEA administrative process because Plaintiffs assert that Defendants' discrimination, based on M.'s handicap,

interfered with his education and led to the denial of a FAPE."). Therefore, the IDEA's exhaustion requirement applies to Plaintiffs' Section 504 claim. *See Batchelor*, 759 F.3d at 274 (holding that a Section 504 claim alleging numerous actions by school district to sabotage student's education "'relate[s] unmistakably' to the provision of a [free appropriate public education,] and [is] thus subject to the IDEA's exhaustion requirement" (citations omitted)).

### 3. Exceptions to the IDEA's Exhaustion Requirement

Having found that Plaintiffs' Section 504 claim is subject to the IDEA's exhaustion requirement, the Court must still consider whether an exception to the IDEA's exhaustion requirement applies to Plaintiffs' IDEA and Section 504 claims. Plaintiffs do not dispute that their administrative remedies under the IDEA remain unexhausted, but rather argue that any such requirement would be futile because Brandon has already graduated from high school and is seeking monetary damages. (ECF Nos. 111-1 at 22-24, 111-5 at 19-21).

Previously, courts in this circuit have held actions seeking compensatory damages to be exempt from exhaustion. *See, e.g., D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 495 n.3 (D.N.J. 2008). However, in a July 2014 decision, the Third Circuit Court of Appeals clarified that whether a claim is subject to exhaustion does not depend on the form of relief, but whether the underlying cause of action is so related to the provision of a free appropriate public education that it should first be addressed by the administrative process. *See Batchelor*, 759 F.3d at 273-74. Such is the case here.

In *Batchelor v. Rose Tree Media School District*, the Third Circuit observed that "the theory behind [Plaintiffs'] grievance may activate the IDEA's process, even if the [Plaintiffs] want[] a form of relief that the IDEA does not supply." *Id.* at 276 (citations omitted). Thus:

In response to a school district's alleged bad behavior, the educational harms

22

suffered by children with disabilities will be addressed first and foremost during the IDEA's administrative process. Once these educational deficiencies have been addressed, victims may seek further remedy in court pursuant to statutory schemes allowing for compensatory and punitive damages, such as Section 504[.]

*Id.* at 278. Therefore, the question of whether a plaintiff is exempt from exhaustion does not focus on the relief requested, but on the educational harm suffered. *See id.*

Preliminarily, the Court notes that, like the plaintiff in *Batchelor*, Plaintiffs' requested relief is not confined to compensatory damages. In addition to compensatory damages, plaintiffs also request "pecuniary damages," "punitive damages," "reasonable attorneys' fees," and "such further relief which the Court may deem just and equitable." (ECF No. 91 at 24). In an IDEA due process hearing, an administrative law judge ("ALJ") may grant relief in the form of attorneys' fees, compensatory education, and reimbursement. *See Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 197 (3d Cir. 2004) (affirming an administrative law judge's order for a school district "to reimburse [the student] for the out-of-district tuition and related costs, including [the student']s reasonable attorneys' fees"). Thus, Plaintiffs do, in fact, seek relief available under the IDEA.

The Court next turns to whether the allegations underlying the Plaintiffs' causes of action "activate the IDEA's process." The alleged result of Defendants' IDEA and Section 504 violations is that Brandon was "deprived . . . of access to educational opportunities and benefits provided by the school," and was "excluded from participation in . . . educational benefits and subject to discrimination." (ECF No. 91 ¶¶ 120, 128). Deficiencies in the provision of a free appropriate public education are the very grievances upon which the IDEA's administrative process was built to address. 20 U.S.C. § 1400(d)(1)(A) ("The purpose[] of [the IDEA is] to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs[.]"). If the allegations in the Amended Complaint had been proven before an ALJ, Brandon and Colombo would have had

access to specifically tailored relief, guided by administrative officials with expertise in the field of education. In addition, the ALJ could have fashioned further appropriate remedies on an *ad hoc* basis "to ensure that [Brandon] [wa]s fully compensated for [Defendants'] past violations . . . under the IDEA and develop an appropriate equitable award." *D.F. v. Collingwood Borough Bd. of Educ.*, 694 F.3d 488, 498-99 (3d Cir. 2012) (citations omitted). Thus, the nature of Plaintiffs' educational harms are such that they could have found effective relief through the administrative process.

Plaintiffs also argue that they should be excused from exhaustion because Brandon has already graduated. Plaintiffs' argument fails. At the time Plaintiffs filed their original complaint, November 16, 2012, (Dkt. 12-7132, ECF No. 1), Brandon was under the age of twenty-one. (ECF No. 31 at 1 ("Brandon Colombo (D.O.B. 08/31/1992)")). Pursuant to the IDEA, a school district's obligation to provide a free appropriate public education does not terminate until the child reaches the age of twenty-one. 20 U.S.C. § 1412(a)(1)(A); *see also Batchelor*, 759 F.3d at 278 n.14 (noting that IDEA remedies were "available even though [the student] ha[d] since graduated from high school" because "[u]nder the IDEA, a school district's obligation to provide a FAPE terminates when the child reaches the age of twenty-one"); *R.D. v. Souderton Area Sch. Dist.*, No. 11-2995, 2015 WL 2395156, at *3 n.3 (E.D. Pa. May 19, 2015) (noting that "based on information provided in the original, verified Complaint," the student "is in fact nineteen-years-old . . . . [but] retain[s] her IDEA-based rights through age 21"). Brandon, at the age of twenty, was therefore within the scope of the IDEA at the time Plaintiffs' original complaint was filed, and could have received various remedies via the administrative process, including financial reimbursement, compensatory education, and a more developed factual record.

Even taking all inferences in Plaintiffs' favor, the present action falls within the ambit of

24

the IDEA exhaustion requirement. Plaintiffs failed to satisfy the exhaustion requirement and are unable to demonstrate that an exception applies. Accordingly, this Court cannot assert subject matter jurisdiction over the Plaintiffs' IDEA and Section 504 claims.

## F.     Remaining State Law Claims

Preliminarily, the Court notes that the consolidation of Plaintiffs' case, (Dkt. 12-7132), with Colombo's case, where, through separate motion practice, the Court denied in part and granted in part Defendants' motions to dismiss, (Dkt. 11-785), did not create a single case for jurisdictional purposes. *See Deluxe Bldg. Sys., Inc. v. Constructamax, Inc.*, 94 F. Supp. 3d 601, 607 (D.N.J. 2013) ("[T]he order consolidating these two cases did not create a single case for jurisdictional purposes."); *see also id.* ("The Third Circuit . . . prohibit[s] the treatment of consolidated cases as a single action where doing so would diminish or enlarge the rights of a party. That includes cases in which consolidated treatment would implicate the court's jurisdiction.").

As to Plaintiffs' remaining state law claims, the Court declines to exercise supplemental jurisdiction. The basic statutory grant of federal court subject-matter jurisdiction provides for federal-question jurisdiction and for diversity of citizenship jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (citing 28 U.S.C. §§ 1331, 1332). "A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Id.* Here, as Plaintiffs failed to state a cognizable federal claim, the Court does not have federal question jurisdiction. To invoke § 1332, Plaintiffs must state "a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $ 75,000." *Id.* Here, as Plaintiffs cannot plead complete diversity of citizenship, the Court cannot consider their claims under diversity jurisdiction. Further, the Court declines to exercise supplemental

jurisdiction pursuant to 28 U.S.C. § 1367(c) over any remaining state-law claims arising in the Amended Complaint. Accordingly, the Court dismisses Plaintiffs' Amended Complaint in its entirety.

## V.     CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are granted. To the extent the pleading deficiencies identified by this Court can be cured by way of amendment, Plaintiffs are hereby granted thirty (30) days to file an amended pleading. An appropriate Order accompanies this Opinion.

DATED: October 27, 2017

_____
**CLAIRE C. CECCHI, U.S.D.J.**